EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

BIOSAFE-ONE, INC. d/b/a
WWW.BIOSAFEONE.COM
and CHRISTOPHER JORGENSEN,

          *Plaintiffs*,

   -against-

ROBERT HAWKS; BRAD SKIERKOWSKI;
NEWTECHBIO, USA a/k/a BRAD & COMPANY,
INC. d/b/a WWW.NEWTECHBIO.COM;
WWW.JUMBOMORTGAGES101.COM
a/k/a JUMBOMORTGAGES.NET; and
BCI FUNDING GROUP,

          *Defendants*.
--------------------------------------------------------------X

Case No.:  07 CV 6764 (DC)

**VERIFIED COMPLAINT
AND JURY DEMAND**

Plaintiffs, by their attorneys Oved & Oved LLP, complaining of the Defendants, upon

information and belief, set forth and allege as follows:

## SUMMARY OF CLAIMS

1.    Plaintiffs commenced this action after being victimized by the unlawful,

fraudulent, unfair and unconscionable acts of Defendant Robert Hawks, who held himself out as

Plaintiffs' purported mortgage broker, and who, in collusion with his partner Brad Skierkowski,

used their position of trust to collect highly-sensitive confidential information from Plaintiffs,

unlawfully and unfairly misappropriated that information in violation of their fiduciary duties to

Plaintiffs, repeatedly and willfully copied extensive intellectual property from Plaintiffs,

repeatedly and fraudulently stole and impersonated Plaintiffs' corporate identity, and completely

and unlawfully replicated Plaintiffs' unique, successful and pioneering website and business,

thereby causing and continuing to cause serious irreparable harm to Plaintiffs' business,

reputation, goodwill, trade name, trademarks, and ability to fairly compete in the marketplace.

2.      Unless the Court intervenes and enjoins Defendants' ongoing unlawful conduct, Plaintiffs will continue to be irreparably harmed and Plaintiff Jorgensen risks losing his sole livelihood and business.

3.      Accordingly, Plaintiffs seek immediate injunctive and monetary relief and bring the following causes of action: (i) federal copyright infringement under 17 U.S.C. § 501 *et seq.*; (ii) federal trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); (iii) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (iv) federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (v) breach of fiduciary duty and misappropriation of corporate opportunities; (vi) fraud; (vii) intentional interference with business relations; (viii) breach of contract; (ix) deceptive use of Plaintiffs' name under New York State General Business Law ("NY GBL") § 133; (x) infringement of Plaintiffs' trade name and mark under NY GBL §§ 360-k and 360-m; (xi) injury to Plaintiffs' business reputation and dilution under NY GBL §§ 360-l and 360-m; (xii) deceptive business practices, copyright infringement, consumer fraud, unfair competition, and false advertising under NY GBL §§ 349 and 350; (xiii) violation of the New York State Fair Credit Reporting Act, NY GBL § 380; (xiv) violation of the Federal Fair Credit Reporting Act, U.S.C. § 1681; (xv) conversion; (xvi) trespass to chattels; (xvii) common law unfair competition; (xviii) unjust enrichment; (xix) civil conspiracy; (xx) *prima facie* tort; and (xxi) a permanent injunction.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (Lanham Act claims), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a)-(b) (original jurisdiction to adjudicate federal copyright and trademark claims and accompanying

claims of unfair competition), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over all other related claims).

5.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) & (c) and 1400(a).

## PARTIES

6.    Plaintiff BIO-SAFE ONE, INC., d/b/a WWW.BIOSAFEONE.COM ("Bio-Safe One") is a privately-held New York corporation, duly existing under and by virtue of the laws of the State of New York, with a principal place of business in New York.

7.    Bio-Safe One's primary business is the sale of septic and waste management products through the operation of an industry-leading, well-established and innovative website located at the internet address www.biosafeone.com. (the "Bio-Safe One Website" or the "Website").

8.    Plaintiff CHRISTOPHER A. JORGENSEN ("Jorgensen") is a natural person residing in New York, and the principal, founder and sole owner/operator of Bio-Safe One and the Bio-Safe One Website.

9.    Defendant ROBERT HAWKS ("Hawks") is a natural person residing in Pennsylvania who, at all relevant times, was or purported to be a mortgage broker, and does business in this jurisdiction.

10.    Defendant BRAD SKIERKOWSKI ("Skierkowski") is a natural person residing in Pennsylvania who, at all relevant times, was or purported to be a mortgage broker, and does business in this jurisdiction.

11.    Defendant NEW TECH BIO, USA a/k/a BRAD & COMPANY, INC. d/b/a WWW.NEWTECHBIO.COM is a Pennsylvania business entity (or sham entity) owned and

operated by Hawks and Skierkowski, with a principle place of business at 102 N. Blakely Street, Suite No. 204, Dunmore, Pennsylvania, 18512. NEW TECH BIO, USA a/k/a BRAD & COMPANY, INC. is doing business in this jurisdiction through a recently-launched and infringing website located at the internet address www.newtechbio.com.

12.     Defendant     WWW.JUMBOMORTGAGES101.COM     a/k/a     WWW. JUMBOMORTGAGES.NET ("JumboMortgages") is a Pennsylvania business entity (or sham entity) with an office at 102 N. Blakely Street, Dunmore, Pennsylvania, 18512, which conducts business  in  this  jurisdiction  through  a  website  located  at  the  internet  address www.jumbomortages101.com.    JumboMortgages is owned and operated by Hawks and Skierkowski.

13.     Defendant BCI FUNDING GROUP is a Pennsylvania business entity (or sham entity) with an office at 102 N. Blakely Street, Suite No. 207, Dunmore, Pennsylvania, 18512. BCI Funding Group is owned and operated by Hawks and Skierkowski, and does business in this jurisdiction.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.     Plaintiffs' Valuable Business, Website, and Intellectual Property

14.     Plaintiff Christopher A. Jorgensen has extensive expertise, knowledge and years of experience in the septic products and waste management industry.

15.     In or about early 2002, Mr. Jorgensen founded his current business, Plaintiff Bio-Safe One and launched Bio-Safe One's Website under the internet domain name www.biosafeone.com.

16.    Bio-Safe One has since operated its online business continuously at www.biosafeone.com, offering industrial-strength septic cleaning and waste management products directly to consumers.

17.    Since beginning operations in 2002, Plaintiffs have invested hundreds of thousands of dollars and substantial time, effort and energy into developing, administering, refining and upgrading the Bio-Safe One Website, as well as promoting, publicizing, advertising and marketing the Website and business.

18.    Among other things, Plaintiffs, as well as graphic designers, photographers, software programmers and other professionals hired by Plaintiffs, (i) designed the layout of the Website and each of its individual pages; (ii) authored and revised unique computer code, text, and graphics for the Website; and (iii) developed the Bio-Safe One brand through continuous enhancement and optimization of the Bio-Safe One Website.

19.    All of the software programmers and other professionals hired by Plaintiffs to design aspects of the Website were engaged on a "work-for-hire" basis and, accordingly, all intellectual property rights were established in Plaintiffs' name. B

20.    Plaintiffs developed and created unique trade and service marks, labels, logos, slogans, product names, packaging and trade dress for their products, business and Website.

21.    Plaintiffs developed and created a unique and innovative customer and marketing brochure (the "Brochure") to further brand, market and sell their products, and to give them a distinctive competitive edge in the industry.

22.    Plaintiffs developed and created unique and distinctive product and trade names including "Heavy Sludge Digester," and "Light Shock," "Medium Shock," and "Heavy Shock."

5

23.    Through much effort, time, and money, Plaintiffs created a unique "Treatment Guide," exclusive to the Bio-Safe One Website, which contained many innovative terms, intellectual property, designs and images.

24.    Plaintiffs revolutionized the septic products and waste management industry by creating a pioneering application of their products to a drain field restoration process wholly exclusive and unique to Plaintiffs' business and Website.

25.    Plaintiffs developed innovative pricing structures, shipping arrangements, advertising campaigns, and other ground-breaking facets of their business.

26.    As a result of Plaintiffs' significant expenditures, the Bio-Safe One business and Website have gained a very distinct profile in the septic products market and industry.

27.    Plaintiffs' investments in developing the Bio-Safe One Website have resulted in a rapidly growing online business with a famous brand name known for delivering to the market high quality and reliable septic waste removal products.

28.    Over the course of many years, Plaintiffs have also developed relationships with numerous suppliers, advertisers, vendors and customers, which they have kept confidential and secret at all times.

29.    Plaintiffs have continuously upgraded the business and Bio-Safe One Website.

30.    Plaintiffs are the sole and lawful proprietors and owners of all rights, title and interests in and to the Bio-Safe One Website and related product brochures.  Attached hereto at **Exhibit A** are the United States Copyright Office Certificates of Registration for the aforementioned works.

**B.    Defendants' Unlawful, Fraudulent, and Infringing Activities**

31.    Through an elaborate, willful and calculated scam, Defendants, holding themselves out in a position of trust as Plaintiffs' mortgage brokers, completely and willfully ripped-off and replicated Plaintiffs' entire business and Website and caused, and are continuing to cause, significant and irreparable ongoing injury to Plaintiffs.

**i.    Defendants' Mortgage Broker Ruse & Misappropriation of Plaintiffs' Confidential Business Information**

32.    In or about early 2005, Mr. Jorgensen, the principal, founder and sole owner/operator of Bio-Safe One and biosafeone.com, became interested in purchasing residential real estate as a first-time home buyer.

33.    Mr. Jorgensen began conducting internet searches to locate a qualified mortgage broker to obtain bank financing to fund the real estate purchase.

34.    Through this process, Mr. Jorgensen located Defendants Robert Hawks and Brad Skierkowski, and their companies (or sham companies), Defendant www.jumbomortgages101.com a/k/a jumbomortgages.net ("JumboMortgages") and Defendant BCI Funding Group ("BCI").

35.    Hawks and Skierkowski claimed to have extensive experience, qualifications and credentials as mortgage brokers and overall expertise in real estate financing.

36.    At all relevant times, Hawks, Skierkowski, JumboMortgages and BCI held themselves out as mortgage brokers specializing in "jumbo mortgages" – *i.e.*, mortgages with a loan amount above the industry-standard definition of conventional conforming loan limits.

37.    At all relevant times, Hawks and Skierkowski wholly dominated JumboMortgages, exercised complete control over said company, and were and are the alter-egos of said company.

38.    At all relevant times, Hawks and Skierkowski wholly dominated BCI, and exercised complete control over said company, and were and are the alter-egos of said company

39.    Mr. Jorgensen thereafter retained Hawks, Skierkowski, JumboMortgages and BCI to procure mortgage financing for his purchase of residential real estate.

40.    Among other things, Mr. Jorgensen entered into an agreement with Hawks, Skierkowski, JumboMortgages and BCI under which, *inter alia*, any and all information provided by Plaintiffs to Defendants was to be kept in the strictest confidence, and was only to be used for the purposes of obtaining and/or underwriting financing for Mr. Jorgensen's real estate purchase.

41.    Under the guise of obtaining mortgage financing for Mr. Jorgensen, Hawks, Skierkowski, JumboMortgages and BCI requested that Mr. Jorgensen provide detailed financial information about the operation of Plaintiffs' business and Website, which is Mr. Jorgensen's primary source of income.

42.    Specifically, at the request of Hawks, Skierkowski, JumboMortgages and BCI, Mr. Jorgensen provided Defendants with 24 months of Plaintiffs' complete bank statements, including account numbers, bank stamps, balances, payment schedules, withdrawal information, as well as detailed accounting information concerning Plaintiffs' business and finances.

43.    In addition, Hawks, Skierkowski, JumboMortgages and BCI requested detailed follow-up information from Plaintiffs, including highly-confidential business information concerning Plaintiffs' customers, sales, suppliers, advertisers, vendors, business operations, and overall business goals, plans, strategies and bottom line, as well as Plaintiffs' IP address.

44.    Mr. Jorgensen provided the foregoing confidential information to Hawks, Skierkowski, JumboMortgages and BCI solely to obtain financing for the purchase of real estate

as a first-time home buyer, and with the understanding and the express agreement of Defendants, that said information was to be kept in the strictest confidence at all relevant times, and was only to be used for the purposes of obtaining and/or underwriting financing for a real estate purchase.

45.    Mr. Jorgensen also authorized Hawks, Skierkowski, JumboMortgages and BCI to run credit reports and verify Plaintiffs' credit history, past and present earnings, stock holdings, bank account information, and other financial and accounting information for the limited and specific purposes of obtaining bank financing to purchase real estate.

46.    In addition to JumboMortgages and BCI, Hawks and Skierkowski also were agents of, or purported to be agents of, and transacted business through, or purported to transact business through, Eastern American Mortgage Co. and NovaStar Home Mortgage, Inc.

47.    It is unclear at this stage whether Eastern American Mortgage Co. and NovaStar Home Mortgage, Inc. were actively involved in Defendants' scheme or were mere vehicles used by Hawks and Skierkowski to bolster their purported credentials as mortgage brokers and allow them to further take advantage of Plaintiffs.  As such, Plaintiffs reserve the right to add these companies as Defendants herein to the extent the facts and evidence support such claims.

48.    In addition, at all relevant times, Hawks was, or purported to be, a "branch manager" of Dana Capital Group, Inc. ("Dana Capital"), the lender which ultimately underwrote Mr. Jorgensen's financing.

49.    Mr. Jorgensen also entered into an agreement with Dana Capital under which, *inter alia*, any and all information provided by Plaintiffs to Dana Capital was to be kept in the strictest confidence and was only to be used for the purposes of obtaining and/or underwriting financing for Mr. Jorgensen's real estate purchase.

50.    As with Eastern American Mortgage Co. and NovaStar Home Mortgage, Inc., the extent of Dana Capital's involvement in Defendants' scheme is unclear at this time and Plaintiffs reserve the right to add Dana Capital as a Defendant herein.

51.    Without Plaintiffs' knowledge, and in violation of the parties' agreement, as well as numerous state and federal statutes, regulations and common law obligations, Defendants misappropriated Plaintiffs' confidential information that Mr. Jorgensen had provided to Defendants solely to obtain mortgage financing and, over the course of the ensuing two years, embarked on a fraudulent scheme to unlawfully reproduce, steal and infringe upon Plaintiffs' business, goodwill and Website, ultimately erecting, a virtually-identical directly competing business and Website located at the internet address www.newtechbio.com, which appeared in or around March 2007.

52.    Prior    to    forming    their    competing    rip-off    business    and    launching www.newtechbio.com, none of the Defendants had any experience of any kind in the septic products or waste management industry.

**ii.    Defendants' Unlawful and Fraudulent Impersonations of Plaintiffs**

53.    In furtherance of their unlawful scheme, using confidential information swindled and misappropriated from Plaintiffs, Defendants began posing as Bio-Safe One and unlawfully contacting Plaintiffs' suppliers, advertisers, vendors and customers.

54.    At all relevant times, Plaintiffs had always dearly guarded and protected the identities and contact information of each of their suppliers, advertisers, vendors, and customers.

55.    Defendants would not have had access to the confidential and proprietary information concerning Plaintiffs' suppliers, advertisers, vendors and customers but for Defendants' position of trust as Plaintiffs' mortgage brokers, as discussed in the preceding paragraphs.

56.    Defendants have repeatedly masqueraded, posed, impersonated and fraudulently pawned themselves off as Plaintiffs, and repeatedly contacted Plaintiffs' suppliers, advertisers, vendors and customers to gather additional confidential and proprietary information concerning Plaintiffs' business and operations in furtherance of their scam.

57.    In addition, Defendants, and/or their agents, have impersonated Plaintiffs' potential clients and customers, and repeatedly contacted Plaintiffs to gather more information to carry out their scheme.

### iii.    Defendants' Copying and Infringement of Plaintiffs' Intellectual Property

58.    In addition to the foregoing unlawful acts, and with utter disregard for trademark, copyright and unfair trade practice laws, Defendants engaged in an illicit campaign of pilfering Plaintiffs' business, Website and valuable intellectual property.

59.    Defendants repeatedly and willfully copied Plaintiffs' labels, logos, slogans, trade and service marks, product names, brochure, packaging and trade dress.

60.    Defendants repeatedly and willfully copied numerous images, text descriptions, photographs, graphics and other valuable intellectual property from Plaintiffs' Website and placed them directly on their own infringing website.

61.    Defendants' repeatedly and willfully copied Plaintiffs' pricing structure, shipping methods, vendor structure, Website layout and design.

62.    In fact, Defendants repeatedly and willfully designed their entire infringing website to "look and feel" like Plaintiffs' Website.

63.    Set forth below, without limitation, are specific examples of Defendants' myriad willful thefts of Plaintiffs' valuable intellectual property, beginning with each site's home page and working through the .  In many instances, Defendants' blatant and willful copying and

11

infringement is underscored by the fact that Defendants duplicated large portions of text from Plaintiffs' Website, including grammatical irregularities, unique type-settings, and typographical errors.

64.     Plaintiffs' Website contains, on its home page, a copy of which is attached hereto as **Exhibit B**, a set of comparison photographs of a septic tank "before" and "after" utilization of Plaintiffs' product, as follows:

**Photographs of a Septic Tank**



Before B.O.S.S          After B.O.S.S

65.     Defendants' infringing website contains, on its home page, a copy of which is attached here to as **Exhibit C**, a very substantially similar set of comparison photographs of a septic tank labeled as "Before" and "After" utilization of Defendants' purported product, as follows:






**Before NT-MAX***          **After NT-MAX***

66.    Plaintiffs' Website contains, on its "Product Info" Page, attached hereto as **Exhibit D**, the following color diagram of a septic system including a house, sewer line, septic tanks, water level, and "scum level."



67.    Defendants' infringing website contains, on its "About NT-Max" Page, attached hereto as **Exhibit E**, the following substantially similar diagram of a septic system including a house, sewer line, septic tanks, water level, and "scum level."



68.    Plaintiffs' Website contains, on its "Product Info" page, <u>see</u> **Exhibit D**, a statement that each "treatment comes in pre-measured bags containing aerobic (oxygen surviving) and anaerobic (non-oxygen surviving) bacteria conveniently freeze- dried [*sic*] on bran.  We direct you to flush the contents of one bag down your commode once a month" and that the product "comes to life when they touch water and digest the top layer of the cesspool or septic tank called the 'scum' layer (fats, soaps)."

69.    Defendants' infringing website contains, on its "About NT-Max" page, <u>see</u> **Exhibit E**, the identical statement that each "treatment comes in pre-measured bags containing

oxygen and non-oxygen surviving bacteria conveniently freeze- dried [sic] on bran. We direct you to flush the contents of one bag down your commode once a month" and that the product "comes to life when they touch water and digest the top layer of the cesspool or septic tank called the 'scum' layer (fats, soaps)." Tellingly, it is clear that Defendants' stole the foregoing text directly from Plaintiffs' Website given that, inter alia, Defendants failed to remove an inadvertent space after the hyphen in "freeze- dried."

70.    Plaintiffs' Website includes a unique, innovative and exclusive "Treatment Guide," attached hereto as **Exhibit F**, which Plaintiffs created after much research, design and effort, including coining the original terms "Light Shock," "Medium Shock" and "Heavy Shock," as follows:

## Treatment Guide

| Age of Septic System | Condition | What to Order | How to Apply |
|---|---|---|---|
| New to 1 Year Old | Normal | 1.5 yr. **or** 3 yr. Supply of B.O.S.S | 1 bag per month |
| | | **OR** One 5 gal. of BIO-112 | 10 oz. per month |
| | Problematic | 3 yr. Supply of B.O.S.S | Follow directions for "Medium Shock" then maintain with one bag per month |
| | | **OR** One 5 gal. of BIO-112 | Apply 20 oz. the first month then maintain with 10 oz. per month |
| 1 Year to 5 Years | Normal | 3 yr. Supply of B.O.S.S | Follow directions for "Light Shock" then maintain with 1 bag per month |
| | Problematic | 3 yr. Supply of B.O.S.S **and** One 5 gal. of BIO-112 | Shock with BIO-112 . Follow directions for "Medium Shock" for B.O.S.S then maintain with one bag per month |
| 5 Years to 15 Years | Normal | 3 yr. Supply of B.O.S.S | Follow directions for "Medium Shock" then maintain with 1 bag per month |
| | | **OR** One 5 gal. of BIO-112 | Apply 20 oz. the first month then maintain with 10 oz. per month |

| | | | |
|---|---|---|---|
| | **Problematic** | Two to Three 5 gal. of BIO-112 **and** 3 yr. Supply of B.O.S.S | Shock with BIO-112. Follow directions for "Heavy Shock" for B.O.S.S then maintain with one bag per month |
| **15 Years to 30+ Years** | **Normal** | 3 yr. Supply of B.O.S.S | Follow directions for "Medium Shock" then maintain with 1 bag per month |
| | | **OR** One 5 gal. of BIO-112 | Apply 20 oz. the first month then maintain with 10 oz. per month |
| | **Problematic** | Three to Eleven 5 gal. of BIO-112 **and** 3 yr. Supply of B.O.S.S | Shock with BIO-112. Follow directions for "Heavy Shock" for B.O.S.S then maintain with one bag per month |

**We guarantee that we have a greater than 99% rate of success at restoring failed drainfields & septic systems when used as directed**

71.    Defendants' infringing website contains a nearly identical "Treatment Guide," attached hereto as **Exhibit G**, obviously copied from Plaintiffs' Website, which, among other things, includes the same column and row names, uses the Plaintiffs' terms "Light Shock," "Medium Shock" and "Heavy Shock," and recommends identical treatments.    Notably, Defendants made a token effort to differentiate their Treatment Guide by changing the term "Heavy Shock" to "MAX Shock", but neglected to fully cover their tracks and left "Heavy Shock" in the text beneath their Treatment Guide :

## Treatment Guide
**Our success rate is extremely high at restoring clogged septic and drainfield systems when NT-MAX products are administered per application guidelines. Please refer to the bottom of this page for complete descriptions of the various treatment guidelines. Septic systems are designed to function 100% properly when maintained and treated on a regular basis.**

| Age of Septic System | Condition of System | Recommended Product | How to Use |
|---|---|---|---|
| **New to 1 Years Old** | No Problems | 1.5 yr. or 3 yr. supply of NT-MAX<br><br>**OR**<br><br>One 5 Gal. NT-MAX Liquid Treatment | 1 bag per month or 10 oz. NT-MAX liquid per month |

| | | | |
|---|---|---|---|
| | Having Problems | 3 yr. Supply of NT-MAX<br><br>**OR**<br><br>One 5 Gal. NT-MAX Liquid | Start with "Medium Shock" treatment then follow up with 1 bag per month<br>or<br>Apply 20 oz. NT-MAX Liquid the first month followed by 10 oz. per month maintenance |
| **1 to 5 years Old** | No Problems | 3 yr. supply of NT-MAX<br><br>**OR**<br><br>One 5 Gal. NT-MAX Liquid | Start with "Light Shock" then 1 bag per month there after<br>or<br>20 oz. liquid the first month then maintain with 10 oz. monthly |
| | Having Problems | 3 year supply of NT-MAX<br>**AND**<br>One 5 gal. NT-MAX Liquid | Start with "Medium Shock" treatment then follow up with 1 bag per month<br>**AND**<br>Follow instructions for NT-MAX Liquid Shock |
| **5 to 15 years old** | No Problems | 3 yr. supply of NT-MAX<br><br>**OR**<br><br>One 5 Gal. NT-MAX Liquid Treatment | Start with "Medium Shock" followed by 1 bag per month<br>or<br>Apply 20 oz. NT-MAX Liquid initially, followed by 10 oz. per month |
| | Having Problems | 3 yr. supply of NT-MAX<br>**AND**<br>Two 5 gal. NT-MAX Liquid | "MAX Shock" with NT-MAX followed by 1 bag per month<br>**AND**<br>Follow directions for "Liquid Shock" with NT-MAX Liquid |
| **15 years or older** | No Problems | 3 yr. supply of NT-MAX<br><br>**OR**<br><br>One 5 Gal. NT-MAX Liquid | Start with medium Shock then 1 bag per month there after<br>or<br>20 oz. NT-MAX liquid |

16

| | | the first month then maintain with 10 oz. monthly |
|---|---|---|
| Having Problems | 3 year supply of NT-MAX **AND** Three to eleven 5 gal. of NT-MAX Liquid | Start with NT-MAX "MAX Shock" treatment then follow up with 1 bag per month **AND** Follow directions for "Liquid Shock" with NT-MAX Liquid |

**NT-MAX powdered Shock Treatment Directions:**

By "Shocking" the system, an increased dose of sludge digesting bacteria is introduced at an accelerated rate to aggressively attack and digest sewage clogging your system.

**"light shock", "Medium Shock"** and **"Heavy Shock"** refer to NT-MAX powder and **"Liquid Shock"** refers to NT-MAX Liquid.

72.    On Plaintiffs' Treatment Guide page, <u>see</u> **Exhibit F**, in the instructions for the Plaintiffs' liquid septic cleaner, the word "commode" is used in the first sentence, but in subsequent sentences, the synonym "toilet" is used.

73.    On Defendants' Treatment Guide page, <u>see</u> **Exhibit G**, in the instructions for the Defendants' liquid septic cleaner, the word "commode" is used in the first sentence, but in subsequent sentences, the synonym "toilet" is used.

74.    Plaintiffs' Website indicates that Plaintiffs' products were based on a "proven bacterial formula used by the EPA to treat the Exxon Valdez Oil Spill in 1989." <u>See</u> **Exhibit B**. Plaintiffs were the first and, until Defendants' stole their intellectual property, trade secrets and business model, the only website that featured a link between the clean-up of the Exxon Valdez Oil Spill and industrial strength septic cleaning products.

75.    Defendants' infringing website contains a virtually-identical statement that their purported products were based on a formula "used to treat . . . the Exxon Valdez Oil Spill in 1989." See **Exhibit C**.

76.    Plaintiffs' Website contains, on its "Product Info" page, attached hereto as **Exhibit D**, a statement that "The more difficult to cultivate anaerobic bacteria in B.O.S.S. [Plaintiffs' product] digest the lower heavier solid or 'sludge' layer."

77.    Defendants' infringing website contains, on its "About NT-Max" page, attached hereto as **Exhibit E**, an identical statement that "The more difficult to cultivate anaerobic bacteria in NT-Max [Defendants' purported product] digest the lower heavier solid or 'sludge' layer."

78.    Plaintiffs' Website contains, on its "Product Info" page, see **Exhibit D**, the statement that its product:

> digests up to 100 pounds of sludge and scum in a 24-hour period. With such a high digestion rate, B.O.S.S. [Plaintiff's Product] reduces the depth of sewage in the tank and increases the overall capacity of your tank. This process lowers the pressure in the septic tank which allows proper digestion to take place, making sure that sludge or scum does not flow into the drainfield where it clogs the drainfield pipes ands soil. B.O.S.S. reduces strain on your whole system, and increases system longevity.

79.    Defendants' infringing website contains, on its "About NT-Max" page, see **Exhibit E**, the nearly-identical statement that Defendants' purported product:

> digests up to 100 pounds of the sludge and scum clogging your septic and drainfield system in a 24-hour period. With such a high digestion rate, NT-Max [Defendants' purported product] quickly reduces the depth of sewage in the tank and increases the overall capacity of your tank. This process lowers the pressure in the septic tank which allows proper digestion to take place, making sure that sludge or scum does not flow into the drainfield, further clogging the drainfield pipes and soil. NT-Max reduces strain on your whole system, and increases system longevity and functionality.

80.    Plaintiffs' Website contains, on its "Product Info" page, see **Exhibit D**, the

following paragraphs in this distinct selection and arrangement:

> Additionally, sludge buildup results in loss of ¼" - ½" of space every 4 years along the walls of your pipes, limiting the amount and rate of sewage flowing through your system. Using B.O.S.S. [Plaintiffs' product] on a monthly basis assures that buildup does not occur.
>
> The bacterial cultures introduced by B.O.S.S. are laboratory produced and tested. We guarantee to be non-disease causing and non-hazardous. The specific types and volume of bacterial strains developed by our laboratories, especially the anaerobic cultures necessary to combat difficult wastes such as grease and paper have been developed over 56 years, the most effective means of dissolving wastes available.
> B.O.S.S. can save you tens of thousands of dollars in costly repairs and prevent you from having to replace your septic system. It can cost from $10,000 to $70,000 to repair or replace your septic system.
>
> B.O.S.S. is highly effective in cesspools, drywells, and lagoons and is approved for all septic system applications. Chemical products are dangerous and cost more. With B.O.S.S. you receive an industrial strength treatment that is safe for your family at wholesale cost, saving you the 50% retail mark-up while providing you with the best possible septic treatment for your home.

81.    Defendants' infringing website contains, on its "About NT-Max" page see

**Exhibit E**, the following nearly-identical paragraphs in the same distinct selection and

arrangement as the Plaintiffs' Website:

> Sludge buildup results in loss of ¼" - ½" of space every 4 years along the walls of your pipes, limiting the amount and rate of sewage flowing through your system. Using NT-Max [Defendants' purported product] on a regular basis assures that buildup does not occur. The bacterial cultures introduced into your system by NT-Max are laboratory produced and tested to assure premium quality. We guarantee to be non-disease causing and non-hazardous. The specific types and volume of bacterial strains developed by our laboratories, especially the anaerobic cultures necessary to combat difficult wastes such as grease and paper have been developed over 70 years, the most effective means of dissolving wastes available.
>
> NT-Max can save you tens of thousands of dollars in costly repairs and prevent you from having to replace your septic system, which can cost $10,000 to $70,000 or more to repair or replace.

NT-Max is highly effective in cesspools, drywells, RV's and lagoons and is approved for all septic system applications. Chemical products are dangerous to the environment, your family and pets, and cost more. With NT-Max, you receive an industrial strength treatment that is safe for your family at wholesale cost, saving you more than 50% over retail mark-up while providing you with the best possible septic treatment for your home.

82.    Plaintiffs' Website contains, on its "Purchase" page, attached hereto as **Exhibit H**, the following paragraphs in this distinct selection and arrangement:

THE BIO-112 HEAVY SLUDGE DIGESTER IS FORMULATED FOR THE TREATMENT OF RESIDENTIAL, HOTEL AND COMMERCIAL SEPTIC SYSTEMS, GREASE TRAPS, SLOWLY RUNNING DRAINS, FLOOR DRAINS AND PORTABLE TOILETS.

BIO-112 IS THE LATEST TECHNOLOGICAL DEVELOPMENT IN WASTE TREATMENT FORMULATED BY THE SAME GROUP OF SCIENTISTS THAT HELPED CLEAN THE EXXON VALDEZ OIL SPILL.

THE ACTIVE INGREDIENT IN BIO-SAFE ONE BIO-112 HEAVY SLUDGE DIGESTER IS HIGHLY CONCENTRATED ENZYME FORTIFIED AEROBIC (OXYGEN SURVIVING) AND ANEROBIC (NON-OXYGEN SURVIVING) BACTERIA (550 BILLION BACTERIA/GAL.).

BIO-112 COMES IN LIQUID FORM, A 5 GALLON PAIL.  55 GALLON DRUMS ARE AVAILABLE VIA BULK ORDER.  UNLIKE CHEMICALS, IT IS NATURAL, SAFE AND EFFECTIVE.

IN ANY APPLICATION,THERE IS A "SEEDING" EFFECT. THAT IS, THE MICROBES IN THE INITIAL DOSE GROW TO PROVIDE AN EVER INCREASING POPULATION, DIGESTING GREASE, PAPER, AND ORGANIC SEWAGE. THE BIO-112 HEAVY SLUDGE DIGESTER IS EASY TO APPLY. THIS IS THE STRONGEST TREATMENT AVAILABLE ON THE MARKET AND HAS PATENTED STRAINS OF BACTERIA THAT CAN COMPLETELY DIGEST GREASE AND ALL TYPES OF SEWAGE/SLUDGE.

83.    Defendants' infringing website contains, on its "Order" page, attached hereto as **Exhibit I**, the following nearly-identical paragraphs in the same distinct selection and arrangement as the Plaintiffs' Website:

THE NT-LIQUID HEAVY SLUDGE DIGESTER IS DESIGNED FOR THE COMPLETE TREATMENT OF RESIDENTIAL, HOTEL AND COMMERCIAL SEPTIC SYSTEMS, GREASE TRAPS, SLOWLY RUNNING DRAINS, FLOOR DRAINS AND PORTABLE TOILETS.

NT-LIQUID IS THE STRONGEST TREATMENT IN WASTE DIGESTION CREATED BY THE SAME GROUP OF SCIENTISTS THAT HELPED CLEAN THE EXXON VALDEZ OIL SPILL AND SIMILAR ENZYMES WERE USED ON THE GALAPAGOS OIL SPILL CLEANUP.

THE ACTIVE INGREDIENT IN NT-LIQUID HEAVY SLUDGE DIGESTER IS HIGHLY CONCENTRATED ENZYME FORTIFIED AEROBIC (OXYGEN SURVIVING) AND ANAEROBIC (NON-OXYGEN SURVIVING) BACTERIA (900 BILLION BACTERIA/GAL.).

NT-LIQUID SHIPS IN A 5 GALLON PAIL. 55 GALLON DRUMS ARE AVAILABLE VIA BULK ORDER. UNLIKE CHEMICALS, IT IS NATURAL, SAFE AND EFFECTIVE.

IN ANY APPLICATION, THERE IS A "SEEDING" EFFECT. THAT IS, THE MICROBES IN THE INITIAL DOSE GROW TO PROVIDE AN EVER INCREASING POPULATION, DIGESTING GREASE, PAPER, AND ORGANIC SEWAGE. NT-LIQUID HEAVY SLUDGE DIGESTER IS EASY TO APPLY. THIS IS THE STRONGEST TREATMENT AVAILABLE ON THE MARKET AND HAS PATENTED STRAINS OF BACTERIA THAT CAN COMPLETELY DIGEST GREASE AND ALL TYPES OF SEWAGE/SLUDGE.

84.     Plaintiffs' Website contains, on its "Purchase" page, see **Exhibit H**, the following text: "**Keep Your Entire Septic System Sparkling Clean, Clear and Free of Contamination!** *It's Easy!* Just Flush the Contents of One Convenient Packet Down Your Toilet Once a Month!"

85.     Defendants' infringing website contains, on its "Order" page, see **Exhibit I**, the following nearly-identical text: "**Keep Your Entire Septic System in Like New Condition and Free of clogging and Contamination!** *It's So Easy! Simply Flush the Contents of One Convenient Packet Down Your Toilet Once a Month!*"

86.     Plaintiffs' Website contains, on its "Product Info" page, see **Exhibit D**, a statement that "The aggressive anaerobic bacteria in B.O.S.S. digest the lower heavier solid or 'sludge' layer."

87.    Defendants' infringing website contains, on its "About NT-Max" page, see **Exhibit E**, the identical statement that "The aggressive anaerobic bacteria in NT-Max digest the lower heavier solid or 'sludge' layer."

88.    At the bottom of almost every page on Plaintiffs' Website is a hyperlink in large, bold print: **"Need Help?  Don't Know What to Order?  Click Here!"** The link takes the user to Plaintiffs' Treatment Guide.

89.    At the bottom of almost every page on Defendants' infringing site is the same link, in the same large, bold print, but it reads **"Need Help Deciding What to Order?  Click Here!"** Clicking on the link will take the user to Defendants' infringing Treatment Guide.

90.    Plaintiffs' Website contains, on its "Comparisons" page, attached hereto as **Exhibit J**, a chart detailing other brands, years of experience, and monthly costs.

91.    Defendants' infringing website contains, on its "Compare" page, attached hereto as **Exhibit K**, a virtually-identical chart detailing other brands, years of experience, and monthly costs.

92.    Plaintiffs' Website contains, on its "FAQs" (frequently asked questions) page, attached hereto as **Exhibit L**, the following 10 questions:

- What is Bio-Safe One Septic Solution (BOSS)?
- How does Bio-Safe One Septic Solution work?
- How do I know if Bio-Safe One Septic Solution works?
- Why should I use Bio-Safe Septic Solution (BOSS)?
- Is Bio-Safe One Septic Solution safe?
- How does Bio-Safe One Septic Solution (BOSS) protect my soil?
- How do I know if my system is not working properly?
- When do I need to pump my tank?
- What should I know about odors and my system?

- How can Bio-Safe One Septic Solution (BOSS) help me save money and avoid future problems?

93.    Defendants' infringing website contains, on its "FAQs" page, attached hereto as **Exhibit M,** 11 purported frequently-asked questions, ten of which are <u>identical</u> to the ten questions on Plaintiffs' FAQ page.

94.    Defendants' infringing website copies Plaintiffs' product name "Heavy Sludge Digester." <u>See</u> **Exhibit D** (Plaintiffs' "Product Info" page) and **Exhibit E** (Defendants' "About NT-Max" page).. "Heavy Sludge Digester" is a unique product name, used by no other company in the septic cleaning industry or any other. Indeed, a Google search for that exact phrase yields only three hits – two for Plaintiffs' original product and one for Defendants' product. <u>See</u> **Exhibit N.**

95.    Defendants sell their product in the same forms and same size containers (3 different sizes of product in solid form and one in liquid form), for the same prices, and with the same usage recommendations. <u>See</u> **Exhibit D** (Plaintiffs' "Product Info" page) and **Exhibit E** (Defendants' "About NT-Max" page)..

96.    Defendants also copied Plaintiffs' pricing structure, packaging, logos and other protectable intellectual property.

97.    Plaintiffs note again that the specific examples of Defendants' theft, copying, misappropriation and infringement set forth in paragraphs 63 to 95, *supra,* is not exhaustive.

iv.    **Defendants' Efforts to Divert Internet Traffic from Plaintiffs' Site.**

98.    After stealing and copying Plaintiffs' Website, business model and intellectual property, Defendants purchased Plaintiffs' protected trademarks and other similar keywords (*e.g.,* Biosafe, Biosafeone, etc.) on Yahoo!, Google and other internet service providers and search engines, such that internet users entering the term Biosafeone (and/or a variant thereof)

now see a nondescript septic products web advertisement for what is in fact Defendants' infringing website directly next to the link to Plaintiffs' Website.

99.    For example, attached hereto as **Exhibit O** is a copy of a Yahoo! search results page running the search terms "bio safe one". An ad – reproduced below – for Defendants' infringing site appears under "Sponsor Results," directly to the right of Plaintiffs' non-sponsored link, as well as at the bottom of the page, indicating that Defendants have been purchasing Plaintiffs' Marks as internet keywords to divert traffic to Defendants site:

Industrial Strength Septic
Treatment
Completely Restore Clogged
Drainfields and Eliminate Pump-
Outs.
www.newtechbio.com

100.    Users taken in or confused by the proximity of the two links who then click on Defendants' link are thus presented with a website that, especially, in light of Defendants' wrongful pilfering of Plaintiffs' intellectual property and business model, falsely appears to be that of Plaintiffs.

101.    Defendants have even placed text ads on Google that look remarkably similar to Plaintiffs' ads. For example, reproduced below are the two ads that appear in the "Sponsored Links" box at the top of the Google search results page for "septic treatment", attached hereto as **Exhibit P**. Clicking the first ad takes users to Plaintiffs' original site, biosafeone.com, while the substantially similar second ad takes users to Defendants' infringing site, newtechbio.com.

Powerful **Septic Treatment**
www.BioSafeOne.com Powerful Drainfield Restoration Cleans Sludge &
Eliminate Pump-Outs

Maximum **Septic Treatment**
www.NewTechBio.com Totally Restore Clogged Systems Digest Waste.
Eliminate Pump-Outs

24

102.    Since Defendants site went online in or around March 2007, Plaintiffs have also been experiencing the symptoms of "click fraud," an unlawful activity which costs internet marketers and advertisers an estimated $1 billion per year.

103.    Each time a potential customer of the Plaintiffs clicks on one of Plaintiffs' advertisements on an internet search engine home page – such as Yahoo, Google, or MSN -- Plaintiffs are charged a fee by that search engine, ranging anywhere from ten cents ($0.10) to fifty dollars ($50.00) per advertisement.

104.    Plaintiffs spend hundreds of thousands of dollars every year on such fees, but, to limit costs (and as a defense against rampant fraud), in any given day, Plaintiffs have only a certain allotted number of "clicks" with each search engine.

105.    Once this number of clicks is reached each day, Plaintiffs' advertisements stop appearing on the site for the remainder of that day.

106.    "Click fraud" occurs when an advertiser's links are clicked, but the person (or automated program) doing the clicking is not genuinely interested in purchasing the advertiser's product. Rather, the goal is often to increase the advertising costs of a competitor by generating a tremendous number of fraudulent "clicks" on the competitor's advertisements with, of course, no corresponding increase in actual purchases, as the "clicker" did not intend to purchase anything and, indeed, may not even be a live person.

107.    Plaintiffs' fees per "click" paid to search engines have risen dramatically since Defendants entered the market in or around March 2007, with no corresponding increase in actual purchases.

108.    Moreover, Plaintiffs' budget of "clicks" with each search engine is often expended very early in the day, decreasing Plaintiffs' internet presence and increasing

Defendants' presence, particularly given Defendants' purchase of Plaintiffs' name "biosafeone" as an advertising keyword, as discussed, *supra.*

### v.    Defendants' Continued Disparagement of Plaintiffs and Interference with Plaintiffs' Business Relationships

109.    After misappropriating Plaintiffs' confidential information, repeatedly and fraudulently impersonating Plaintiffs in the marketplace, stealing and copying Plaintiffs' Website, business model and intellectual property, Defendants next embarked on a campaign to smear and disparage Plaintiffs and to put Plaintiffs out of business.

110.    Armed with specific financial information acquired via breaches of their fiduciary duties, Defendants again contacted Plaintiffs' suppliers, advertisers, vendors and customers, and repeatedly and falsely disparaged and provided false negative information about Plaintiffs to said parties.

111.    Defendants also made business proposals to Plaintiffs' suppliers which they touted to be superior to what Plaintiffs could offer, based entirely on what Defendants learned while acting as Plaintiffs' fiduciaries.

112.    Defendants repeatedly and unlawfully attempted to coerce Plaintiffs' primary suppliers, which are the lifeblood of Plaintiffs' business, to end their business relationships with Plaintiffs.

113.    Defendants repeatedly and unlawfully attempted to coerce Plaintiffs' advertisers and vendors to end their business relationships with Plaintiffs.

114.    Defendants repeatedly and unlawfully attempted to steal Plaintiffs' clients, customers, and potential customers.

115. Defendants' acts of disparagement and interference have repeatedly and significantly damaged Plaintiffs' relationships with their suppliers, vendors, advertisers, and customers.

**C. Plaintiffs' Irreparable Damage, Harm and Ongoing Injuries**

116. Defendants' wrongful, illegal and unconscionable acts complained of herein have caused and continue to cause significant irreparable harm to the goodwill and famous reputation of Plaintiffs, their business, Website, goodwill, and marks and other intellectual property.

117. Since Defendants launched their infringing website in or about March 2007, Plaintiffs have lost significant business, customers, income and profits.

118. Plaintiffs have also incurred substantially increased costs, including, but not limited to, an inability to launch new advertisements for fear that they will simply be stolen by Defendants; increased time and money spent fielding phone calls from Defendants and/or their agents purporting to be potential customers; and, most significantly, a substantially denigrated relationship with a key supplier as a result of Defendants harassment and interference.

119. Defendants continue to irreparably damage, harm and injure Plaintiffs' relationships with their suppliers, advertisers, vendors, customers, and potential customers.

120. Based on Defendants' activities, Plaintiffs reasonably believe that Defendants intend to continue engaging in the unlawful conduct complained of herein.

121. Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Copyright Infringement)

122. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

123.    Plaintiffs are the sole and lawful proprietors and owners of all rights, title and interests in and to the Bio-Safe One Website and related product brochures. Attached hereto at **Exhibit A** are the United States Copyright Office Certificates of Registration for the aforementioned works.

124.    Defendants, without Plaintiffs' knowledge or consent, infringed and are infringing, upon Plaintiff's protected works by knowingly and willfully engaging in unlawful and unauthorized copying of substantial passages of text as long as several paragraphs in length, numerous images, photographs, graphics and other copyrighted material from Plaintiffs' Website, and placing such material in verbatim or nearly-verbatim form on Defendants' own website, as set forth in more detail in paragraphs 63 through 92, *supra.*

125.    Defendants moreover designed their entire infringing website to "look and feel" exactly like Plaintiffs' Website.

126.    Defendants' acts of copyright infringement are willful, wanton, intentional and deliberate.

127.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

128.    Based on Defendants' activities, Plaintiffs reasonably believe that Defendants intend to continue using illicitly-copied images, text descriptions, photographs, graphics and other valuable intellectual property from Plaintiffs' Website.

129.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116(a).

130.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, trade name, Marks, reputation and good will, the exact amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Federal Trade Dress Infringement, 15 U.S.C. § 1125(a))

131.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

132.    Defendants' conduct constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

133.    Plaintiffs' protectible trade dress elements include, but are not limited to:

a website with blue as the predominant background color;

the arrangement of the website's treatment guide, with Age and Characteristics of septic system down left side of chart and used to find a product recommendation and method of use;

the arrangement of the website's Comparison guide, with columns setting forth competitors' price, money saved with Bio-Safe, experience, and results;

unique arrangement of paragraphs of text on individual pages within website; and,

stylized depiction of molecule used throughout website and on product packaging.

134.    Defendants' trade dress infringes on Plaintiffs' trade dress by incorporating identical or nearly-identical elements that, alone and/or or in combination, create a likelihood of confusion as to the source and quality of Defendants' products.

135.    Defendants' use and infringement of Plaintiffs' trade dress is willful, wanton, intentional and deliberate.

136.    The harm to Plaintiffs resulting from Defendants' unlawful acts is irreparable, continuing and not fully compensable by money damages.

137.    Defendants' unlawful acts have significantly damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by the Court.

138.    Based on Defendants' activities, Plaintiffs reasonably believe that Defendants intend to continue unlawfully and unfairly using Plaintiffs' trade dress.

139.    As such, Plaintiffs are entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a), prohibiting Defendants from any and all use of Plaintiffs' trade dress.

140.    Moreover, Plaintiffs are entitled to recover from Defendants all damages that Plaintiffs have sustained and will sustain as a result of such infringing acts and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, but which Plaintiffs are entitled to have trebled due to Defendants' willful infringement or, in the alternative, statutory damages as the Court considers just plus the costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Federal Trademark Infringement, 15 U.S.C. § 1114)

141.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

142.    Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

143.    Prior to the acts complained of in this complaint, Plaintiffs have made extensive use of their inherently distinctive trademarks BIOSAFEONE, www.biosafeone.com, "Light Shock," "Medium Shock," "Heavy Shock" and "Heavy Sludge Digester," as well as additional distinctive service and trade marks, trade names, labels, logos, slogans, and product names as set forth in paragraphs 63 to 93, *supra* (collectively, the "Marks").

144. Defendants' hijacking, copying, theft, infringement, and unauthorized commercial use of Plaintiffs' Marks is likely to cause confusion, mistake and/or to deceive the public as to the source or origin of the purported products, goods and services sold by Defendants and/or whether there is a legitimate connection between Defendants or their purported products, and Plaintiffs and their products, goods and services.

145. Defendants' acts of infringement are willful, wanton, intentional and deliberate.

146. The harm to Plaintiffs resulting from Defendants' unlawful acts is irreparable, continuing and not fully compensable by money damages.

147. Based on Defendants' activities, Plaintiffs reasonably believe that Defendants intend to continue unlawfully using Plaintiffs' illegally-obtained Marks.

148. Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116(a).

149. Moreover, Plaintiffs are also entitled to a judgment from this Court awarding Plaintiffs damages equal to three times the amount of the damages it suffered as a result of Defendants' acts or, in the alternative, statutory damages as the Court considers just, pursuant to 15 U.S.C. § 1117.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Federal Trademark Dilution, 15 U.S.C. § 1125(c))

150. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

151. As a result of the duration and extent of use of the Marks and Website by Plaintiffs, the duration and extent of the advertising and publicity of the Marks and Website by Plaintiffs, the superior quality of Plaintiffs' services and the degree of recognition of Plaintiffs'

Marks and Website, Plaintiffs' Marks and Website have achieved an extensive degree of distinctiveness and are famous trademarks.

152.    As a result of Defendants' hijacking, copying, infringing, theft and ongoing improper commercial use of Plaintiffs' Marks and Website, Defendants have diluted and continue to dilute the distinctive quality of and reputation associated with Plaintiffs' Marks and Website.

153.    Defendants' acts of trademark dilution are willful, wanton, intentional and deliberate.

154.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

155.    Based on Defendants' activities, Plaintiffs reasonably believe that Defendants intend to continue unlawfully using Plaintiffs' illegally and unfairly obtained Marks.

156.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116(a).

157.    Moreover, Plaintiffs are also entitled to a judgment from this Court awarding Plaintiffs damages equal to three times the amount of the damages it suffered as a result of Defendants' unlawful acts or, in the alternative, statutory damages as the Court considers just, pursuant to 15 U.S.C. § 1117.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty & Misappropriation of Corporate Opportunities)

158.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

159. Plaintiffs retained Defendants Hawks, Skierkowski, JumboMortgages and BCI to procure mortgage financing for Plaintiffs' purchase of residential real estate in New York State.

160. Plaintiffs entered into an agreement with Hawks, Skierkowski, JumboMortgages and BCI under which, *inter alia*, any and all information provided by Plaintiffs to Defendants was to be kept in the strictest confidence, and was only to be used for the purposes of obtaining and/or underwriting financing for Mr. Jorgensen's real estate purchase.

161. Defendants Hawks, Skierkowski and JumboMortgages owed a fiduciary duty to Plaintiffs.

162. Under the guise of obtaining mortgage financing, Hawks, Skierkowski and JumboMortgages obtained detailed financial information about the operation of Plaintiffs' business and Website, including copies of twenty-four (24) months of Plaintiffs' complete bank statements, account numbers, bank stamps, balances, payment schedules, withdrawal information, detailed accounting information concerning Plaintiffs' business and finances, and highly-confidential business information concerning Plaintiffs' customers, sales, suppliers, advertisers, vendors, business operations, and overall business goals, plans, strategies and bottom line.

163. Plaintiffs provided the foregoing confidential information to Hawks, Skierkowski, JumboMortgages, BCI solely to obtain financing for the purchase of real estate, and with the understanding, including based on the agreement with Defendants, that, at all relevant times, said information was to be kept in the strictest confidence, and was only to be used for the purposes of obtaining and/or underwriting financing for a real estate purchase, as stated in signed loan documents.

164.    Mr. Jorgensen also authorized Hawks, Skierkowski and JumboMortgages to run credit reports and verify Plaintiffs' credit history, past and present earnings, stock holdings, bank account information, and other financial and accounting information, for the limited and specific purposes of obtaining bank financing to purchase real estate.

165.    Defendants breached their fiduciary duties and obligations to Plaintiffs by, among other things, misappropriating Plaintiffs' confidential information that Plaintiffs had provided to Defendants solely to obtain mortgage financing, and using said confidential information to embark on a scheme to unlawfully reproduce, steal and infringe Plaintiffs' business, goodwill and Website, and set up a virtually identical directly competing business and Website.

166.    Defendants also used breached their fiduciary duties and obligations to Plaintiffs by unlawfully using information obtained from Plaintiffs' authorization to run credit reports and verification to further their scheme.

167.    Defendants' unlawful breaches and misappropriations are willful, wanton, intentional and deliberate.

168.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

169.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

170.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, Marks, reputation and good will, the exact amount to be determined at trial.

34

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Fraud)

171.   Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

172.   Plaintiffs justifiably relied on Defendants' material and false representations that they would act in good faith as Plaintiffs' mortgage broker, and that any and all information provided by Plaintiffs to Defendants was to be kept in the strictest confidence, and was only to be used for the purposes of obtaining and/or underwriting financing for a real estate purchase by a first-time home buyer.

173.   Defendants misrepresented and/or omitted material facts when, with the intent to deceive and defraud, they requested extensive confidential information from Plaintiffs under the guise of acting as Plaintiffs' mortgage broker.

174.   Defendants knowingly and fraudulently, and with the intent to deceive, requested from Plaintiffs 24 months of Plaintiffs' complete bank statements, including account numbers, bank stamps, balances, payment schedules, withdrawal information, detailed accounting information concerning Plaintiffs' business and finances, and detailed follow-up information from Plaintiffs, including highly-confidential business information concerning Plaintiffs' customers, sales, suppliers, advertisers, vendors, business operations, and overall business goals, plans, strategies and bottom line.

175.   Defendants thereafter fraudulently misappropriated Plaintiffs' confidential information that Plaintiffs had provided to Defendants solely to obtain mortgage financing, and using said confidential information to embark on a scheme to unlawfully reproduce, steal and infringe Plaintiffs' business, reputation, goodwill and Website, and, using said fraudulently-obtained information, set up a virtually identical directly competing business and Website.

176.    In addition, Defendants committed numerous additional acts of fraud as detailed *supra*, including fraudulently misappropriating and using information obtained from Plaintiffs' credit authorizations, impersonating Plaintiffs' identity in the market, repeatedly contacting Plaintiffs' suppliers, advertisers, vendors and customers while falsely claiming to be Plaintiffs, and using Plaintiffs' Marks (*e.g.*, BIOSAFEONE) as an advertising keyword to fraudulently generate online traffic to their infringing website through falsely advertising with companies such as Yahoo.

177.    Defendants' acts of fraud are willful, wanton, intentional and deliberate.

178.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

179.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

180.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, trade name, Marks, reputation and good will, the exact amount to be determined at trial.

### AS AND FOR AN SEVENTH CAUSE OF ACTION
### (Intentional Interference With Prospective Economic Advantage)

181.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

182.    Plaintiffs have actual and prospective business relationships with numerous third parties, including customers, clients, advertisers, suppliers, vendors, advertisers and internet users.

183.   Defendants' intentional unlawful acts – including impersonating, masquerading as, posing as, and/or fraudulently passing themselves off as Plaintiffs in the marketplace, unlawfully contacting Plaintiffs' customers, clients, advertisers, suppliers, vendors, advertisers and internet users, and misappropriating Plaintiffs' confidential business information and corporate identity – have repeatedly interfered with Plaintiffs' economic and business relationships.

184.   Defendants also contacted Plaintiffs suppliers, advertisers, vendors and customers, and repeatedly and falsely disparaged and provided false negative information about Plaintiffs to said parties.

185.   Defendants repeatedly attempted to coerce Plaintiffs' primary suppliers, which are the lifeblood of Plaintiffs' business, advertisers and vendors into not doing business with Plaintiffs.

186.   Defendants repeatedly and unlawfully attempted to steal Plaintiffs' clients, customers, and potential customers

187.   Defendants acted with the purpose of harming Plaintiffs for the unlawful purpose of stealing Plaintiffs' business, customers, identity, intellectual property, suppliers and confidential information, unfairly competing with Plaintiffs, and improperly and unlawfully attempting to shut down Plaintiffs' entire Website and business operations.

188.   Defendants' acts of interference with Plaintiffs' business relations are willful, wanton, intentional and deliberate.

189.   The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

190.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

191.    Moreover, Defendants' acts have caused substantial monetary damage to Plaintiffs' Website, business operations, trade name, Marks, reputation and good will, the exact amount to be determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Breach of Contract)

192.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

193.    Plaintiffs entered into a valid and binding contract with Defendants Hawks, Skierkowski, JumboMortgages and BCI under which, *inter alia*, any and all information provided by Plaintiffs to said Defendants was to be kept in the strictest confidence, and was only to be used for the purposes of obtaining and/or underwriting financing for a real estate purchase.

194.    At all relevant times, Plaintiffs fully performed their duties and obligations under the agreement, provided valuable consideration, and fully complied with all terms, conditions, and requirements thereof.

195.    Defendants materially breached the Agreement by misappropriating Plaintiffs' confidential information that Plaintiffs had provided to Defendants solely to obtain mortgage financing, and using said confidential information to embark on a scheme to unlawfully reproduce, steal and infringe Plaintiffs' business, goodwill and Website, and set up a virtually-identical directly competing business and Website.

196.    As a direct result of Defendants' breaches of the Agreement, Plaintiffs have been injured and suffered extensive monetary damages, in an amount to be determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Use of Plaintiffs' Name With Intent to Deceive in
### Violation of New York General Business Law § 133)

197.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

198.    Defendants have wrongfully, willfully, fraudulently and unlawfully used, stolen, appropriated and infringed upon Plaintiffs' name, identity, Website, Marks, reputation, intellectual property and goodwill.

199.    Defendants' unlawful acts were done for the unlawful purpose of stealing Plaintiffs' business, customers, identity, intellectual property, suppliers and confidential information, unfairly competing with Plaintiffs, and improperly and unlawfully attempting to shut down Plaintiffs' entire Website and business operations.

200.    Defendants' acts constitute use of Plaintiffs' corporate and/or trade name with intent to deceive or mislead in violation of New York General Business Law § 133.

201.    Defendants' acts of using Plaintiffs' name with intent to deceive or mislead are willful, wanton, intentional and deliberate.

202.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

203.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to New York General Business Law § 133.

204.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, trade name, Marks, reputation and good will, the exact amount to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Infringement of Plaintiffs' Protected Trade Name and Mark in Violation of New York General Business Law §§ 360-k and 360-m)

205.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

206.    Defendants' conduct constitutes infringement of Plaintiffs' Marks, Website and trade name under New York General Business Law § 360-k.

207.    Defendants' infringement, copying, stealing, hijacking and unauthorized commercial use of Plaintiffs' Marks, Website and confidential information is likely to cause confusion, mistake and to deceive the public as to the source or origin of the purported products, goods and services sold by Defendants and/or whether there is a legitimate connection between Defendants or their purported products, and Plaintiffs and their products, goods and services.

208.    Defendants' acts of infringement are willful, wanton, intentional and deliberate.

209.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

210.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to New York General Business Law § 360-m.

211.    Moreover, Plaintiffs are entitled to a judgment from this Court awarding Plaintiffs damages equal to three times the amount of the damages they suffered as a result of Defendants' acts pursuant to New York General Business Law § 360-m.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
#### (Injury to Plaintiffs' Business Reputation and Dilution in
#### Violation of New York General Business Law §§ 360-l and 360-m)

212.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

213.    Defendants' infringing, hijacking, copying, stealing and misappropriation of Plaintiffs' Marks, Website, and confidential information, and unlawful commercial use of Plaintiffs' valuable Marks is likely to injure Plaintiffs' business reputation and to dilute the distinctive quality of Plaintiffs' Marks in violation of New York General Business Law § 360-l.

214.    Defendants' unlawful use of Plaintiffs' Marks, Website and identity in connection with their sham commercial activities that are wholly unconnected to Plaintiffs and which are neither sponsored by, endorsed or affiliated with Plaintiffs nor are they within Plaintiffs' control, are likely to dilute the distinctive quality of Plaintiffs' in violation of New York General Business Law § 360-l, and thus cause significant damage and injury to Plaintiffs.

215.    Defendants' injurious acts and dilution are willful, wanton, intentional and deliberate.

216.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

217.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction pursuant to New York General Business Law § 360-m.

218.    Moreover, Plaintiffs are also entitled to a judgment from this Court awarding Plaintiffs damages equal to three times the amount of the damages it suffered as a result of Defendants' acts pursuant to New York General Business Law § 360-m.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Deceptive Business Practices, Copyright Infringement, Consumer Fraud, Unfair Competition, and False Advertising in Violation of New York General Business Law §§ 349 and 350)

219.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

220.    Defendants, by infringing, hijacking, stealing and copying Plaintiffs' Marks, Website, identity, business and confidential information, and unlawfully misusing the same for commercial purposes, have deceived, confused, and misguided the public and various internet service providers as to the source or origin of the purported products, goods and services sold by Defendants, that there is a legitimate connection between Defendants or their purported products, and Plaintiffs and their products, goods and services, and/or that Defendants' sham commercial activities are authorized by, endorsed by, affiliated with or otherwise associated with Plaintiffs.

221.    Defendants' unlawful acts have been and continue to be misleading to the public, and others, in a material way.

222.    Defendants' acts are willful, malicious and constitute deceptive business practices, copyright infringement, consumer fraud, false advertising and unfair competition under New York General Business Law §§ 349 and 350.

223.    Defendants' deceptive business practices are willful, wanton, intentional and deliberate.

224.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

225.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are

entitled to a preliminary and permanent injunction pursuant to New York General Business Law § 349(h).

226.   Moreover, Plaintiffs are also entitled to a judgment from this Court awarding Plaintiffs damages equal to three times the amount of the damages it suffered as a result of Defendants' acts pursuant to New York General Business Law § 349(h).

### AND AS FOR A THIRTEENTH CAUSE OF ACTION
### (Identity Theft, N.Y. Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380)

227.   Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

228.   Defendants' conduct violates the New York Fair Credit Reporting Act, New York Gen. Bus. Law § 380(s).

229.   Defendants have repeatedly impersonated, masqueraded as, posed as, and/or fraudulently passed themselves off as Plaintiffs in the marketplace, unlawfully contacted Plaintiffs' customers, clients, advertisers, suppliers, vendors, advertisers and internet users, misappropriated Plaintiffs' confidential business information and corporate identity, and repeatedly and intentionally interfered with Plaintiffs' economic and business relationships.

230.   Defendants, without consent and with intent to defraud, have knowingly obtained, possessed, transferred, used, and attempted to obtain, possess, transfer, or use credit, goods, and services from Plaintiffs' suppliers, advertisers, vendors and customers by posing as Plaintiffs when contacting them.

231.   Defendants' unlawful acts have damaged and continue to cause damage and irreparable injury to Plaintiffs. As such, Plaintiffs are entitled to the sum of actual damages sustained by Plaintiffs, as a result of Defendants' willful violation of New York Gen. Bus. Law § 380(s), such punitive damages as this Court will allow to punish to defendant and deter it and

43

others from engaging in similar conduct in the future, plus the costs of this action, including reasonable attorney's fees as determined by the Court and court costs, pursuant to New York Gen. Bus. Law § 380(l).

### AND AS FOR A FOURTEENTH CAUSE OF ACTION
#### (Improper Acquisition and Use of Consumer Report in Violation of Federal Fair Credit Reporting Act, 15 U.S.C. § 1681)

204.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

232.    Plaintiff Christopher Jorgensen transacted with Defendants as a consumer, for the purposes related to the acquisition and financing of personal and residential real estate.

233.    In connection with this transaction, Defendants obtained, under false pretenses, and wrongfully used information relating to individual Plaintiffs' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living (the "Consumer Report").

234.    The Consumer Report was expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the Mr. Jorgensen's eligibility for credit to be used primarily for personal purposes, in the form of a personal mortgage.

235.    The Consumer Report was obtained, under the false pretenses of being used in the ordinary course of a mortgage broker, from a consumer reporting agency regularly engaged in the assembly and evaluation of consumer information for the purposes of furnishing consumer reports to persons such as Defendants, via channels including but not limited to mail and telephone.

236.    While Defendants purported to require this information to help Mr. Jorgensen obtain a personal mortgage, the real purpose for this transaction was to knowingly, willfully,

maliciously, and fraudulently scam and rob Mr. Jorgensen of his personal assets including, but not limited to, his unique and proprietary plans related to his sole means of livelihood.

237. The deceptive, fraudulent and malicious purpose behind Defendants' use of Mr. Jorgensen's personal and confidential information constitutes an improper use under the Federal Fair Credit and Reporting Act, 15 U.S.C. § 1681(b).

238. Further, Defendants' wrongful, adverse and damaging use of Mr. Jorgensen's personal and confidential information was perpetrated without notice to Mr. Jorgensen, as required by the Federal Fair Credit and Reporting Act, 15 U.S.C. § 1681(m).

239. As such, Plaintiffs are entitled to all damages that they sustained and will sustain as a result of such acts in willful noncompliance with Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 and all gains, profits and advantages obtained by Defendants as a result thereof in an amount not yet known, plus such amount of additional punitive damages as this Court determines just which will punish Defendants and deter them and others from engaging in similar conduct in the future, plus the costs of this action, including attorneys' fees and court costs, pursuant to 15 U.S.C. § 1681(n).

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### (Conversion)

240. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

241. Defendants unlawfully stole, misappropriated and hijacked Plaintiffs' confidential business information without Plaintiffs' knowledge, authorization, consent or permission.

242. Defendants unlawfully exercised dominion, control and/or purported right of ownership over the foregoing confidential information.

243.    In addition, Defendants repeatedly and willfully copied numerous images, text descriptions, photographs, graphics and other valuable intellectual property from Plaintiffs' Website and placed them directly on Defendants' infringing website.

244.    Defendants' conversion of Plaintiffs' property is willful, wanton, intentional and deliberate.

245.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

246.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

247.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, Marks, business operations, reputation and good will, the exact amount to be determined at trial.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
### (Trespass to Chattels)

248.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

249.    Defendants, intentionally and without authorization, justification, or consent, have physically interfered with the use and enjoyment of Plaintiffs' personal and valuable property.

250.    Defendants' trespass to Plaintiffs' chattels is willful, wanton, intentional and deliberate.

251.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

252.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs is entitled to a preliminary and permanent injunction.

253.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, Marks, business operations, reputation and good will, the exact amount to be determined at trial.

### AS AND FOR AN SEVENTEENTH CAUSE OF ACTION
### (Unjust Enrichment)

254.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

255.    Defendants' misappropriation of Plaintiffs' confidential information, suppliers, advertisers, vendors, customers, business, images, text descriptions, photographs, graphics and other valuable intellectual property from Plaintiffs has caused Defendant to be enriched.

256.    As described herein, such enrichment was unjust and at Plaintiffs' expense.

257.    Accordingly, in equity and good conscience, Defendants must be compelled to return Plaintiffs' confidential information and such other unjust enrichment unlawfully obtained by Defendants from Plaintiff.

### AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### (Common Law Unfair Competition)

258.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

259.    Defendants' unlawful acts as described in the complaint herein amount to unfair competition under the common law.

260.    Defendants' acts represent an unlawful attempt to wrongly benefit from the reputation of Plaintiffs' trade name, Marks, Website, and to confuse the consuming public – as

47

well as Plaintiffs' suppliers, advertisers, vendors, and customers -- into the incorrect belief that there is an affiliation, connection or association between Defendants and Plaintiffs' business and Website.

261.    Defendants have also unfairly competed and wrongfully used Plaintiffs' Marks for commercial purposes, without authorization, including by purchasing Plaintiffs' protected Marks and other similar words (*e.g.*, Biosafe, Biosafeone, etc.) on Google such that internet users entering the term Biosafeone (and/or similar such search terms) now see a nondescript septic products web advertisement for what is in fact Defendants' infringing website directly next to the link to Plaintiffs' Website.

262.    Defendants' acts of unfair competition are willful, wanton, intentional and deliberate.

263.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

264.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are further entitled to a preliminary and permanent injunction.

265.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, Marks, reputation and good will, the exact amount to be determined at trial.

### AS AND FOR A NINETEENTH CAUSE OF ACTION
### (*Prima Facie* Tort)

266.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

267.    Defendants' unlawful acts as set forth in the preceding paragraphs have resulted in the intentional infliction of harm upon Plaintiffs.

268.    Defendants' acts have resulted in special damages to Plaintiffs.

269.    Defendants' acts were perpetrated without any lawful excuse or legal justification.

270.    Defendants' unlawful acts are willful, wanton, intentional and deliberate.

271.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

272.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

273.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, Marks, reputation and good will, the exact amount to be determined at trial.

### AS AND FOR AN TWENTIETH CAUSE OF ACTION
### (Civil Conspiracy)

274.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

275.    Defendants agreed upon a common scheme amongst themselves to, *inter alia*, misappropriate Plaintiffs' confidential information that Plaintiffs had provided to Defendants solely to obtain mortgage financing, and use said confidential information to embark on a scheme to unlawfully reproduce, steal and infringe Plaintiffs' business, goodwill and Website, and set up a virtually identical directly competing business and website.

276.    Defendants committed overt acts in furtherance of this common scheme, including misappropriating confidential information from Plaintiffs, making misrepresentations

and false statements to third parties, repeatedly impersonating and co-opting Plaintiffs' corporate identity, illicitly copying and stealing code, graphics, text, images and photographs from Plaintiffs' Website, and improperly purchasing Plaintiffs' protected Marks and other similar words (e.g., Biosafe, Biosafeone, etc.) on Google and other internet service providers and search engines.

277.    Defendants' acts of civil conspiracy are willful, wanton, intentional and deliberate.

278.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

279.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court. As such, Plaintiffs are entitled to a preliminary and permanent injunction.

280.    Moreover, Defendants' acts have also caused substantial monetary damage to Plaintiffs' Website, business operations, trade name, Marks, reputation and good will, the exact amount to be determined at trial.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
### (Permanent Injunction)

281.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

282.    Plaintiffs have demonstrated a substantial likelihood of success on the merits of one or more of the causes of action pleaded herein.

283.    Defendants' acts are willful, wanton, intentional and deliberate.

284.    The harm to Plaintiffs resulting from Defendants' acts is irreparable, continuing and not fully compensable by money damages.

285.    Defendants' unlawful acts have damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by this Court.

286.    Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs hereby request that this Court grant it the following relief:

A.     Permanently enjoin Defendants, their agents, servants, representatives, successors, assigns, affiliates, attorneys, employees, nominees and others acting in concert or participation with them, from:

1. operating and conducting any business under the website located at the domain name www.newtechbio.com;

2. impersonating, stealing, or otherwise using Plaintiffs' corporate identity;

3. contacting and/or communicating with Plaintiffs' customers, suppliers, vendors and advertisers;

4. using Plaintiffs' Marks or any other mark or design which is a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks;

5. using Plaintiffs' Marks, trade name and/or identity, or any variations of Plaintiffs' Marks, trade name and/or identity, or any other mark confusingly similar to such Marks, trade name and/or identity or likely to cause dilution of the distinctiveness of the Marks or injury to Plaintiffs' business reputation, in connection with any service or products, sham service or sham products, or any other improper purpose, on the internet or in any other medium;

6. using any other trademark, service mark, trade name, corporate name, word, or symbol, or doing any other acts, likely to induce the belief that Defendants are in any way connected, endorsed, sponsored, employed by or associated with Plaintiffs or with Plaintiffs' products, services, website or businesses or doing any other acts likely to injure Plaintiffs' business reputation or to dilute the distinctive quality of Plaintiffs' Marks, Website, corporate identity and business;

7. using any and all computer code, text, images, graphics, design or photographs taken or copied from Plaintiffs' Website, including, without limitation, all code, text, images, graphics, design or photographs referenced herein, and any work derived or comprising any element thereof; and

8. otherwise engaging in acts of unfair competition, consumer fraud, dilution of trademark, and/or interference with Plaintiffs' business relationships;

B.    Direct Defendants, their agents, servants, representatives, successors, assigns, affiliates, attorneys, employees, nominees, and others acting in concert or participation with them to immediately return all confidential information, intellectual property and/or other valuable property, data or information stolen from or otherwise belonging to Plaintiffs.

C.    Award Plaintiffs damages equal to three times the amount of the damages it suffered as a result of Defendants' acts in an amount to be proven at trial or, in the alternative, statutory damages as the Court considers just;

D.    Award Plaintiffs punitive damages in an amount to be determined at trial;

E.    Award Plaintiffs prejudgment interest to the full extent permitted by law;

F.    Award Plaintiffs their attorneys' fees in this action;

G.    Award Plaintiffs their costs and expenses incurred in this action; and

H.    Award Plaintiffs such other and further relief as this Court may deem just, proper and equitable.

Dated:  New York, New York
        July 2̸6̸, 2007

By: _____
    Darren Oved, Esq. (DO 9337)
    Thomas Freedman (TF 1309)
    OVED & OVED LLP
    *Attorneys for Plaintiffs*
    101 Avenue of the Americas, 15th Floor
    New York, New York  10013
    Tel: 212.226.2376
    Fax: 212.226.7555

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by

jury as to all issues.


Dated:  New York, New York
       July 16, 2007

By:     _____

           Darren Oved, Esq. (DO 9337)
           Thomas Freedman (TF 1309)
           OVED & OVED LLP
           *Attorneys for Plaintiffs*
           101 Avenue of the Americas, 15th Floor
           New York, New York  10013
           Tel: 212.226.2376
           Fax: 212.226.7555

## **VERIFICATION**

Christopher A. Jorgensen hereby affirms under the penalties of perjury the following:

1.    I am an individual Plaintiff herein, and the principal, founder and sole owner/operator of the corporate Plaintiff and Website herein.

2.    I have read and know the contents of the foregoing Verified Complaint and attached exhibits and that the same are true to my own knowledge, except as to the matters to be alleged on information and belief, and as to those matters I believe them be true.

3.    The grounds of my belief as to all matters in said Verified Complaint are papers and records in Plaintiffs' and Defendants' possession and a general investigation and review of the facts and records in this case.

Dated: New York, New York
       July 13, 2007

_____
Christopher A. Jorgensen

Notary Public:

Sworn to before me on this
13 day of June 2007.
      July

_____

NICOLETTA CARTIGLIA
Notary Public, State of New York
No. 01CA4704505
Qualified in Bronx County
Commission Expires January 31, 20 10