UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BIOSAFE-ONE, INC. d/b/a
WWW.BIOSAFEONE.COM
and CHRIS JORGENSEN,

                              *Plaintiffs*,

        -against-

ROBERT HAWKS; BRAD SKIERKOWSKI;
NEWTECHBIO, USA a/k/a BRAD & COMPANY,
INC. d/b/a WWW.NEWTECHBIO.COM;
WWW.JUMBOMORTGAGES101.COM
a/k/a JUMBOMORTGAGES.NET, and BCI FUNDING
GROUP

                           *Defendants*.
-------------------------------------------------------------------X

Case No.: 07-CIV-6764
(DC) (DFE)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

OVED & OVED LLP
*Attorneys for Plaintiffs*
101 Avenue of the Americas, 15th Floor
New York, NY 10013
Tel: 212.226.2376
Fax: 212.226.7555

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

SUMMARY OF ARGUMENT .............................................................................................. 5

ARGUMENT ........................................................................................................................ 7

THIS COURT SHOULD ENTER AN INJUNCTION TO PREVENT DEFENDANTS'
CONTINUED ABUSIVE BUSINESS PRACTICES AND THEFT OF PLAINTIFFS'
INTELLECTUAL PROPERTY. ............................................................................................ 7

I. Irreparable Harm is Presumed Upon a Showing of a Likelihood of Success on Plaintiffs'
Claims for Intellectual Property theft and Breaches of Fiduciary Duty. ................................. 7

II. Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ..................................... 9

   A.  Copyright Infringement, 17 U.S.C. § 501 .......................................................... 9
      1.  Plaintiffs Hold Valid Copyrights on the Copied Materials. ................................ 10
      2.  Defendants Engaged in Unauthorized Wholesale Copying of Materials from
Biosafeone.com. ........................................................................................................ 10
         a.  Defendants "actually copied" materials from Plaintiffs website .................... 10
         b.  Defendants improperly and unlawfully appropriated material from Plaintiffs'
website. ...................................................................................................................... 12

   B.  Trade Dress Infringement, Trademark Infringement, and  Trademark Dilution, 15
U.S.C.A. §§ 1125(a) .................................................................................................... 14
      1.  Trade Dress Infringement, 15 U.S.C.A. § 1125(a) ........................................... 15
         a.  The Strength of Plaintiffs' Trade Dress ........................................................ 16
         b.  The Similarity of the Trade Dresses ............................................................. 16
         c.  The Proximity of the Products in the Marketplace ....................................... 17
         d.  Likelihood the Plaintiff Will Bridge the Gap ............................................... 17
         e.  Evidence of Actual Confusion ...................................................................... 18
         f.  Defendants' Bad Faith ................................................................................. 18
         g.  The Quality of the Defendants' Products ...................................................... 19
         h.  Sophistication of the Relevant Consumer Group ........................................... 20
      2.  Trademark Infringement, 15 U.S.C. § 1125(a) ................................................ 20
      3.  Trademark Dilution, 15 U.S.C.A. § 1125(c) .................................................... 23

   C.  Breach of Fiduciary Duty and Misappropriation of Corporate Opportunities ................... 24

CONCLUSION .................................................................................................................... 26

## TABLE OF AUTHORITIES

CASES

Arrow Fastener Co. v. Stanley Works, 59 F.3d 384 (2d Cir. 1995) ..............................................20

BigStar Entm't v. Next Big Star Inc., 105 F.Supp.2d 185...............................................................7

Bourn Co. v. Tower Records, 976 F.2d 99 (2d Cir. 1992) ..............................................................7

Bristol-Myers Squibb Co. v. McNeil-P.P. C., Inc., 973 F.2d 1033 (2d Cir. 1992) ..................7, 21

Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2003 WL 21056809 (S.D.N.Y. 2003)..............10

Eckes v. Card Prices Update, 736 F.2d 859 (2d Cir. 1984)...........................................................13

Elco Shoe Mfrs. v Sisk, 260 N.Y. 100, 183 N.E. 191 (1932).......................................................24

Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)...........................................13

Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112 (2d Cir. 2005) ...................................................8

Gund, Inc. v. Applause, Inc., 809 F.Supp. 304 (S.D.N.Y. 1993) ..................................................11

Hamil America, Inc. v. GFI, 193 F.3d 92 (2d Cir.1999) ........................................................10, 12

Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70 (2d Cir. l988).....................................................20

Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438 (2d Cir.1977)............................................8

Jorgensen v. Epic/Sony Records, 351 F.3d 46 (2d Cir. 2003).......................................................10

Judith Ripka Designs, Ltd. v. Preville, 935 F.Supp. 237 (S.D.N.Y. 1996) ...................................11

Kraft General Foods, Inc. v. Allied Old English, Inc., 831 F.Supp. 123 (S.D.N.Y. 1993) ...........18

Lynx Ventures, LLC v. Miller, 45 Fed.Appx. 68, 2002 WL 31007386 (2d Cir. 2002) ................12

Mobil Oil Corp. v. Pegasus Petroleum Corp, 818 F.2d 254 (2d Cir. 1987) ..................................20

Moseley v. V Secret Catalogue, Inc., 537 U.S. 418 (2003)...........................................................23

Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576 (2d Cir. 2005) ..........................15, 16

Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,
    166 F.3d 65 (2d Cir. 1999)..........................................................................12, 13

Odegard, Inc. v. Costikyan Classic Carpets, 963 F. Supp. 1328 (S.D.N.Y. 1997).................10, 11

Paddington Corp. v. Attiki Importers & Distributors, Inc.,
    996 F.2d 577 (2d Cir. 1993)....................................................................15, 16, 19

Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158 (2d Cir. 2004) ........................................16

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.1961) ...................................passim

Register.com, Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004) .......................................................8

Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.,
    926 F.2d 134 (2d Cir. 1991)...........................................................................................18

RJR Foods, Inc. v. White Rock Corp., 603 F.2d 1058 (2d Cir. 1979)...........................................17

Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992).............................................................................14

Sheldon v. Metro-Goldwyn Pictures Corp.,
    81 F.2d 49 (2d Cir. 1936) (L. Hand, J.), cert. denied, 298 U.S. 669 (1936)......................14

Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 729 N.Y.S.2d 425 (2001)..................24

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765 (2d Cir. 2007)..........................23

Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., 154 F.Supp.2d 586, 604 (S.D.N.Y. 2001)....... 7-8

TCPIP Holding Co., Inc. v. Haar Comms, Inc., 244 F.3d 88 (2d Cir. 2001) ................................19

Toy Mfrs. of Am. v. Helmsley-Spear, Inc., 960 F.Supp. 673 (S.D.N.Y. 1997) ..............................8

Twin Peaks Prods., Inc. v. Publications Intern., Ltd., 996 F.2d 1366 (2d Cir. 1993)...................13

Video Trip Coup. v. Lightening Video, Inc., 866 F. 2d 50 (2d Cir. 1989).......................................9

Virgin Enters., Ltd. V. Nawab, 335 F.3d 141 (2d Cir. 2003) ...................................................7, 20

Wall v. Coughlin, 754 F.2d 1015 (2d Cir. 1985).............................................................................7

Willis of New York, Inc. v. DeFelice, 299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dep't 2002)..........8

STATUTES & TREATISES

15 U.S.C. § 1125(a), *et seq.* ..................................................................................... *passim*

17 U.S.C. § 410(c) ......................................................................................................10

17 U.S.C. § 501, *et seq.*............................................................................................ *passim*

1 Nimmer on Copyright § 13.03[C], 13.38.2-.3 (1983)..................................................13

N.Y. Jur. 2d, Brokers § 27 (2007)................................................................................24

Plaintiffs respectfully submit this memorandum of law in support of their motion for a preliminary injunction against Defendants. As set forth in the Verified Complaint, Plaintiffs seek injunctive relief and damages for federal copyright infringement in violation of 17 U.S.C. § 501, *et seq.*; trade dress infringement, trademark infringement, and trademark dilution in violation of 15 U.S.C. § 1125(a); and common law breach of fiduciary duty.[1]

## PRELIMINARY STATEMENT

Plaintiffs Christopher Jorgensen and Bio-Safe One, Inc. have marketed industrial-strength septic system cleaning products directly to the public for five years through their website, biosafeone.com. In May 2007, Defendants Robert Hawks and Brad Skierkowski, relying on confidential business and financial information acquired while holding themselves out as Plaintiff Jorgensen's mortgage brokers launched newtechbio.com, a blatant copy of biosafeone.com. There, Defendants not only offer a purportedly similar product at the same prices, in the same formulas, and in the same quantities as Plaintiffs, but they do so utilizing substantial materials – including text, drawings, photographs, charts, trademarks, and trade dress – copied verbatim or nearly-verbatim from Plaintiffs' website. Moreover, using Plaintiffs' confidential information, Defendants have disrupted and continue to disrupt Plaintiffs' business relationships with suppliers, customers, vendors, and advertisers.

This motion seeks a preliminary injunction barring Defendants from any further 1) use of Plaintiffs' copyrighted material, trademarks, and trade dress and 2) any further breaches of fiduciary duties owed to Plaintiffs, including, *inter alia*, contacting, for the purpose of furthering

---

[1] In addition to the claims enumerated above, the Verified Complaint states causes of action for deceptive use of Plaintiffs' name(s) under NY GBL § 133; violations of New York state intellectual property statutes, NY GBL §§ 349, 350, 360-k, 360-l, and 360-m; fraud; breach of contract; intentional interference with business relations; trespass to chattels; common law unfair competition; unjust enrichment; civil conspiracy; *prima facie* tort; and a permanent injunction.

any business competing with Plaintiffs, any person or entity with whom Plaintiffs have or had a business relationship prior to March 2007.

## STATEMENT OF FACTS

For a thorough recitation of the facts, Plaintiffs refer to and incorporate the factual assertions contained in the Verified Complaint, submitted herewith. In the interest of brevity, only a summary of those facts, with citations to corresponding sections of the Verified Complaint, follows here.

Plaintiff Christopher A. Jorgensen has great expertise and many years experience in the septic cleaning and maintenance field. Since 2002, Plaintiff Bio-Safe One, Inc., owned by Plaintiff Jorgensen, has been selling industrial strength septic cleaning products online, directly to consumers at www.biosafeone.com. Plaintiffs' business model revolutionized the industry and Plaintiffs have invested hundreds of thousands of dollars, and substantial non-financial resources, time, effort and energy into developing, administering, refining and upgrading www.biosafeone.com, as well as promoting, publicizing, advertising and marketing the site and business. Verified Complaint, ¶¶ 14 – 17.

In building their business, Plaintiffs have created, developed, and used in commerce substantial amounts of intellectual property, including, but not limited to, trademarks for treatment methods and product names, substantial copyrighted HTML and CSS code and text on biosafeone.com and in a series of Bio-Safe brochures, and a combination of many distinctive features comprising the look and feel of the biosafeone.com site. Plaintiffs also created unique pricing structures, treatment methods, shipping arrangements, and advertising campaigns. As their business has grown, Plaintiffs have built relationships with numerous suppliers, advertisers,

vendors and customers, which they have kept confidential and secret at all times. Verified Complaint, ¶¶ 18 – 29.

Defendants have stolen (and continue to steal) the foregoing fruits of Plaintiffs labor. In early 2005, Plaintiff Jorgensen was in the market for his first home and encountered Defendants Hawks and Skierkowski, who held themselves out to be mortgage brokers specializing in "jumbo mortgages" – *i.e.*, mortgages with a loan amount above the industry-standard definition of conventional conforming loan limits. Relying on Defendants representations that they had extensive experience, qualifications, credentials and overall expertise in real estate financing, Plaintiff Jorgensen retained Defendants as his mortgage brokers. The parties entered an agreement providing, *inter alia*, that any information the Defendants received from Plaintiffs would be used for the sole purpose of acquiring financing for Jorgensen's prospective home purchase. Verified Complaint, ¶¶ 30 – 39.

All pursuant to a ruse that such information was required to acquire financing, Defendants began requesting reams of sensitive financial information related to both Jorgensen's personal finances and that of his business, Bio-Safe. Defendants were thus provided with, *inter alia*, complete bank statements, including account numbers, bank stamps, balances, payment schedules, withdrawal information, as well as detailed accounting information concerning Plaintiffs' business and finances. Defendants also ran credit reports, purportedly to verify Plaintiffs' credit history, past and present earnings, stock holdings, bank account information, and other financial and accounting information. Defendants also requested highly-confidential business information concerning Plaintiffs' customers, sales, suppliers, advertisers, vendors, business operations, and overall business goals, plans, strategies and bottom line, as well as the IP address of biosafeone.com. Verified Complaint, ¶ 40-49.

Defendants ultimately put all these ill-gotten resources to use to launch newtechbio.com, where Defendants sell a purported septic cleaning product. Defendants sell this product in the same quantities and at the same prices as Plaintiffs' product. More importantly, however, substantial portions of Defendants' web site are so similar to Plaintiffs' biosafeone.com, that Defendants' acts cannot be described as anything but outright plagiarism. The Verified Complaint contains numerous comparisons of specific quotes and screen shots from the two sites, Verified Complaint, ¶¶ 62-93. In sum, however, Defendants copied Plaintiffs' substantial amounts of material, including lengthy text passages, product descriptions, drawings, photographs, graphics, charts, brochures, packaging and other valuable intellectual property from Plaintiffs' Website and placed them directly onto their own infringing website. Id. Defendants' copying was so pervasive that they even unwittingly replicated typographical errors and distinguishing word choices. Verified Complaint, ¶¶ 67 – 68, 71 – 72. In fact, Defendants plainly designed their entire infringing website to "look and feel" like Plaintiffs' Website.

Moreover, Defendants have diverted internet traffic intended for Plaintiffs site, biosafeone.com, to their site, newtechbio.com. Verified Complaint, ¶¶ 95 – 105. Specifically, Defendants have purchased the BIOSAFEONE mark (and/or variations thereof) as an advertising keyword with internet search companies, such as Yahoo and Google, to generate online traffic to their infringing website through web advertising. Verified Complaint, ¶¶ 95 – 97. Defendants have also created online advertisements remarkably similar in appearance to Plaintiffs' original advertisements. Verified Complaint, ¶ 98. Consumers searching for septic treatment products are thus faced with two adjacent similar ads – one leading to Plaintiffs' original site and another to Defendants infringing site. Id. Plaintiffs also experienced a spike in the symptoms of "click fraud" around the time Defendants' site went online. Verified Complaint, ¶¶ 99 – 105.

4

Finally, not content to cause confusion and unfairly compete with Plaintiffs in the marketplace, Defendants further abused and continue to abuse the confidential information they received as Plaintiffs' fiduciaries. Specifically, Defendants contact Plaintiffs' suppliers, vendors, and advertisers and either 1) impersonate Plaintiffs to divert credit, goods, and services to themselves that rightfully belong to the Plaintiffs or 2) smear and disparage Plaintiffs and encourage others to end their business relationships with Plaintiffs. Verified Complaint, ¶ 52 – 56, 106 – 112.

Defendants' actions have irreparably damaged Plaintiffs' goodwill and reputation in the marketplace. Bio-Safe One has experienced a continuing and significant decline in customers and sales volume since Defendants launched their infringing site in March 2007. Plaintiffs have every reason to believe that Defendants will continue to wrongfully divert sales from Plaintiffs unless and until enjoined by this Court. Verified Complaint, ¶ 113 – 118.

## SUMMARY OF ARGUMENT

As discussed in <u>Section I</u>, the irreparable harm Defendants' conduct has inflicted, and continues to inflict, upon Plaintiffs' business reputation and customer base is self-evident and, in fact, with regard to Plaintiffs' copyright infringement and Lanham Act claims, such irreparable harm is presumed upon a showing of a likelihood of success on the merits. Moreover, New York state and federal courts have consistently regarded the loss of customers, goodwill, and reputation as an irreparable injury that cannot be adequately covered by monetary damages.

As discussed in <u>Section II. A</u>, Plaintiffs are likely to succeed on the merits of their claim that Defendants infringed upon Plaintiffs' copyrights when Defendants' lifted substantial amounts of material from Plaintiffs' website and simply pasted it onto theirs. Defendants have engaged in unauthorized copying of photos, drawings, charts, and passages of text ranging from

a single sentence to multiple paragraphs that are identical or nearly-identical to corresponding passages on Plaintiffs' site. Defendants' plagiarism was so comprehensive that they even replicated typographical errors and non-standard word choices in Plaintiffs' original copyrighted material.

As discussed in <u>Section II. B,</u> Plaintiffs are also likely to succeed on the merits of their claims asserting multiple violations of the Lanham Act. Specifically, Defendants copied so extensively from Plaintiffs' site, <u>biosafeone.com,</u> that they have infringed upon Plaintiffs' distinctive trade dress, *i.e.,* the distinguishing characteristics of the site where Plaintiffs have marketed their products for the past five years. Defendants have also engaged in outright theft of Plaintiffs' trademarks, using them on their own copycat website to market their own purported competing products. Defendants' piracy and hijacking of Plaintiffs' intellectual property has also diluted Plaintiffs' trademarks and trade dress, both by blurring their ability to uniquely identify Bio-Safe One products and by tarnishing the reputation Plaintiffs have developed over the past five years.

Finally, as discussed in <u>Section II. C,</u> Plaintiffs are likely to succeed on their claim for breach of fiduciary duty. Defendants embarked upon this scheme by first holding themselves out as Plaintiff Jorgensen's mortgage brokers. In that role, Defendants gathered all the confidential financial and business-related information they would need to launch their business and to interfere with Plaintiffs' established business relationships, in plain violation of the fiduciary duties they assumed upon agreeing to become Plaintiff Jorgensen's brokers.

**ARGUMENT**

**THIS COURT SHOULD ENTER AN INJUNCTION TO PREVENT DEFENDANTS'
CONTINUED ABUSIVE BUSINESS PRACTICES AND THEFT OF PLAINTIFFS'
INTELLECTUAL PROPERTY.**

A movant seeking a preliminary injunction must demonstrate a probability of irreparable

harm in the absence of injunctive relief and either (a) a likelihood of success on the merits of its

claims or (b) a serious question going to the merits of its claims and a balance of the hardships

tipping decidedly in its favor. See, e.g., Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 145 (2d

Cir. 2003). "Likelihood of success" does not mean that Plaintiffs must prove their claims or

demonstrate that success is certain, but rather, only that the probability of prevailing is "better

than fifty percent." BigStar Entm't v. Next Big Star Inc., 105 F.Supp. 2d 185, 191 (S.D.N.Y.

2000) (quoting Wall v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)).

I.    **IRREPARABLE HARM IS PRESUMED UPON A SHOWING OF A
      LIKELIHOOD OF SUCCESS ON PLAINTIFFS' CLAIMS FOR
      INTELLECTUAL PROPERTY THEFT AND BREACHES OF FIDUCIARY
      DUTY.**

Plaintiffs have been, and will continue to be, irreparably harmed in the absence of a

preliminary injunction.    In the context of Plaintiffs' claims grounded upon Defendants'

violations of the Copyright Act and Lanham Act, irreparable harm is presumed upon a showing

of a likelihood of success on the merits. See Bristol-Myers Squibb Co. v. McNeil-P.P. C., Inc.,

973 F.2d 1033, 1038 (2d Cir. 1992) (holding that a likelihood of confusion on trademark claim is

also sufficient showing of irreparable harm); Bourn Co. v. Tower Records, 976 F.2d 99, 101 (2d

Cir. 1992) (a likelihood of success on the merits of copyright infringement claim gives rises to a

presumption of irreparable harm); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2003 WL

21056809 at *14 (S.D.N.Y. 2003) ("a sufficient showing that defendants' sales may cause

financial and reputational losses and dilution of its distinctive trade dress" is sufficient to show

7

irreparable harm); Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., 154 F.Supp.2d 586, 604 (S.D.N.Y. 2001)("Generally, once a likelihood of confusion is shown for a trademark or trade dress infringement claim, the requisite irreparable harm is established."); Toy Mfrs. of Am. v. Helmsley-Spear, Inc., 960 F.Supp. 673, 678 (S.D.N.Y. 1997) (a presumption of irreparable harm arises where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question").

Further, the loss of customers, goodwill, and business reputation is a significant component of the losses attributable to every claim upon which Plaintiffs seek this injunction, as well as of all the other claims asserted in the Verified Complaint. Regardless of the underlying cause of action, New York state and federal courts have consistently found that such losses amount to irreparable harm for the purpose of determining whether injunctive relief is appropriate. See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004) (holding that the loss of reputation, good will and business opportunities constitutes irreparable harm); Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) ("An anticipated loss of market share growth may suffice as an irreparable harm."); Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438, 445 (2d Cir.1977) (finding irreparable harm where plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); Willis of New York, Inc. v. DeFelice, 299 A.D.2d 240, 242, 750 N.Y.S.2d 39, 42 (1st Dep't 2002) ("The necessary showing of irreparable damage to plaintiffs has been made out inasmuch as...plaintiffs would likely sustain a loss of business impossible, or very difficult, to quantify.").

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

Defendants' extensive verbatim and nearly-verbatim copying of material from Plaintiffs' website, biosafeone.com, is immediately apparent, even to the casual viewer, from a simple review of the pages printed from the Plaintiffs' and Defendants' websites and attached as Exhibits to the Complaint.    Moreover, Plaintiffs will prove that Defendants have implemented their scheme by abusing the positions of trust and fidelity they held as Plaintiff Jorgensen's mortgage brokers when they misappropriated confidential business and financial information and used to set up an unlawful competing business.    Accordingly, Plaintiffs can demonstrate a likelihood of success on the merits of their claims for A) copyright infringement, 17 U.S.C. § 501, *et seq.*; B) trade dress infringement, trademark infringement, and trademark dilution, in violation of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*; and C) common law breach of fiduciary duty.[2]

### A.    Copyright Infringement, 17 U.S.C. § 501

Defendants infringed upon Plaintiffs protected copyrighted materials by misappropriating substantial amounts of text, graphics, drawings, and arrangements of information from Plaintiffs' website.    To establish a claim for copyright infringement, a plaintiff must show that (1) he or she is the valid owner of a copyright on the copied work and (2) the defendant has engaged in unauthorized "copying" of the work.    Video Trip Coup. v. Lightening Video, Inc., 866 F. 2d 50, 51-52 (2d Cir. 1989).    Here, particularly in light of Defendants' verbatim copying of lengthy passages of original text, Plaintiffs can readily establish both elements of this claim and establish

---

[2] Given the egregiousness of Defendants' behavior and the obvious and extensive copying of Plaintiffs' protected materials, Plaintiffs have a likelihood of success on the merits of every claim asserted in the Complaint.    Those claims share many elements common to the claims discussed here.    Nonetheless, this Motion is limited to Plaintiffs' Copyright Act, Lanham Act, and common law breach of fiduciary duty claims in the interests of brevity and because the ongoing acts and harm forming the bases for these claims are particularly immediate and apparent from facts that cannot be seriously disputed.

their entitlement to a preliminary injunction barring Defendants' continued use of Plaintiffs' copyrighted materials.

1.    Plaintiffs Hold Valid Copyrights on the Copied Materials.

A certificate of registration from the United States Register of Copyrights is *prima facie* evidence of valid ownership of a copyright. See 17 U.S.C. § 410(c); Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir.1999) (alleged infringer bears the burden of rebutting presumption of copyright validity). Plaintiffs have thus satisfied the first prong by attaching as Exhibit S to the Verified Complaint the certificates of registration for the text and HTML and CSS code on the biosafeone.com site for the Bio-Safe One, Inc. brochures.

2.    Defendants Engaged in Unauthorized Wholesale Copying of Materials from Biosafeone.com.

To establish the second element -- "unauthorized copying," or the actual infringement – the copyright owner must demonstrate that the defendant (a) "actually copied" the copyright owner's work and (b) that "the portion copied amounts to an improper or unlawful appropriation." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003). Here, Plaintiffs will establish at trial that Defendants literally copied and pasted the bulk of the text on their site from Plaintiffs' site and that such copying was plainly improper and unlawful.

a.    Defendants "actually copied" materials from Plaintiffs website

Because direct evidence of copying is "seldom available," a plaintiff may demonstrate "actual copying" by showing that the defendant had access to the copyrighted work and that "there are similarities between the two works that are 'probative of copying.'" Jorgensen, 351 F.3d at 51 (emphasis added). Similarities "probative of copying" are those that "would not be expected to arise if the works had been created independently." Odegard, Inc. v. Costikyan Classic Carpets, 963 F. Supp. 1328, 1337 (S.D.N.Y. 1997) Here, Plaintiffs can easily

demonstrate both that Defendants had access to biosafeone.com and that their infringing website, newtechbio.com, is so overwhelmingly similar as to lead to no other conclusion but that copying did occur.

Here, Defendants unquestionably had and continue have access to Plaintiffs' website, biosafeone.com. Judith Ripka Designs, Ltd. v. Preville, 935 F.Supp. 237, 246 (S.D.N.Y. 1996) ("Access may be inferred when the defendant had a reasonable opportunity to view the plaintiffs' work before creating its own."); Gund, Inc. v. Applause, Inc., 809 F.Supp. 304, 307 (S.D.N.Y. 1993) ("Access is only an opportunity to copy."). Anyone with internet access can view Plaintiffs' site. Moreover, Defendants gathered substantial information about biosafeone.com while holding themselves out as Plaintiff Jorgensen's mortgage brokers. Verified Complaint, ¶ 39 – 48. Plaintiffs thus have had knowledge of biosafeone.com for over two years, along with the ability to review and copy its content. See generally Gund, 809 F.Supp at 307 (finding access where plaintiff's copyrighted material was widely available to the public).

Defendants have, without a doubt, taken advantage of that opportunity. The similarities between Plaintiffs' and Defendants' sites go far beyond what would be merely "probative of copying." As the many examples in the Verified Complaint make plain, Defendants have engaged in blatant, verbatim copying and, indeed, "copying and pasting" of passages of text, ranging up to many paragraphs in length. See, e.g., Verified Complaint, ¶ 67 – 68, 71 – 86, 89 – 90. Defendants have also, sometimes with token variation, reproduced charts, photos, and illustrations found on Plaintiffs' website. See, e.g., Verified Complaint, ¶ 63 – 66, 69 – 70. These are certainly not similarities that would be "expected to arise if the works had been created independently." Odegard, 963 F. Supp. at 1337.

b.    Defendants improperly and unlawfully appropriated material from Plaintiffs' website.

Once a plaintiff has demonstrated that the defendant actually copied his or her work, the plaintiff must demonstrate that the copying amounted to an "improper or unlawful appropriation." Such a showing is made by demonstrating that the portion copied was substantially similar to protectible expression in plaintiff's work.

Defendants' website, newtechbio.com, is substantially similar – indeed, in many places, nearly-identical – to Plaintiffs' site, biosafeone.com. "Substantial similarity" is often determined pursuant to the "ordinary observer test," which focuses on the "total look and feel" of the two works and asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Hamil, F.3d at 100. No average lay observer could miss the similarities in the plagiarized material on newtechbio.com.

Moreover, in cases specifically involving the appropriation of text, the Second Circuit has had no difficulty finding copyright infringement, even where the overall look and feel of the two works may have differed.[3] In Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc., 166 F.3d 65, 70 (2d Cir. 1999), for example, the defendant published translations, which it referred to as "abstracts," of the plaintiff's news articles. Finding that each such "abstract" amounted to an infringement of the plaintiff's copyright, the court wrote:

> The abstracts track the information in the articles sentence by sentence, in sequence; only occasionally do the abstracts combine two [of the plaintiff's] sentences, divide a sentence, or rearrange the facts among different sentences. [The defendants] adopt[ ], by and large, the exact same structure and organization of the facts reported by [the plaintiff].

---

[3] The Second Circuit has explained that "where the wholesale and verbatim copying of original text is at issue, as here, reliance on the total concept and feel test effectively immunizes the infringer who appends original material to plagiarized text. This flies in the face of what "Learned Hand declared long ago, [that] 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.' " Lynx Ventures, LLC v. Miller, 45 Fed.Appx. 68, 70, 2002 WL 31007386 at *2 (2d Cir. 2002) (summary order).

Id. at 71. Similarly, in Twin Peaks Prods., Inc. v. Publications Intern., Ltd., 996 F.2d 1366, 1372 (2d Cir. 1993), the court wrote that "the concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language" and affirmed the district court's holding that "the identity of 89 lines of dialogue between the [plaintiff's TV series and defendant's book about it] constituted substantial similarity." Id. at 1372.[4]

Here, Defendants' site is substantially similar to Plaintiffs' site as a matter of both its "total concept and feel" and its identical and nearly-identical text lifted directly from Plaintiffs' site. Defendants have totally copied Plaintiffs' structure and arrangement of information, including, but not limited to, photos of clogged septic lines, a diagram of an underground septic system, a chart presenting Plaintiffs' unique treatment method, and a Frequently Asked Questions page. Verified Complaint, ¶ 63 – 66, 69 – 70, 89 – 90. Defendants have also copied Plaintiffs' expression itself -- the identity of text between the two sites is remarkable, Verified Complaint, ¶ 67 – 68, 71 – 86, 89 – 90, and includes the replication of at least one typographical error and one distinguishing inconsistent word choice from Plaintiffs' site. Verified Complaint, ¶¶ 67 – 68, 71 – 72; see Eckes v. Card Prices Update, 736 F.2d 859, 863 (2d Cir. 1984) ("[C]ourts have regarded the existence of common errors in two similar works as the strongest evidence of piracy.") (quoting 1 M. Nimmer, Nimmer on Copyright § 13.03[C] at 13.38.2-.3 (1983).

Finally, as in Nihon, only rarely did Defendants even bother to vary from Plaintiffs' original expression in any way. Such minor tweaks do not obscure the true source of these passages and, of course, do not shield Defendants from liability for their blatant infringement.

---

[4] Biosafeone.com's content is protectible expression notwithstanding the fact that it is not a work of fiction. It is well-settled that non-fictional expression is protected by copyright. Nihon, 166 F.3d at 70 ("Compilations of facts…may be protected by copyright because they can display originality in their selection, arrangement or presentation of facts. Descriptions of facts afford even more room for originality.") (citing Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344 (1991)).

Rogers v. Koons, 960 F.2d 301, 308 (2d Cir. 1992) (citing Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936) (L. Hand, J.), cert. denied, 298 U.S. 669 (1936)) ("[N]o copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated . . . [W]here substantial similarity is found, small changes here and there made by the copier are unavailing.")[5]

As Plaintiffs have thus demonstrated a likelihood of success on the merits of their cause of action for copyright infringement, this Court should, accordingly, enter a preliminary injunction barring Defendants from operating their infringing website, newtechbio.com, pending a trial on the merits and a permanent injunction protecting Plaintiffs' intellectual property from Defendants' theft.

**B.    Trade Dress Infringement, Trademark Infringement, and Trademark Dilution, 15 U.S.C.A. §§ 1125(a)**

In addition to the protected copyrighted elements of biosafeone.com, Plaintiffs have developed and created the site's unique and identifiable trade dress as well as a number of trade and service marks, labels, logos, slogans, and names for their products, treatment methods, and business. As illustrated in great detail in the Verified Complaint, Defendants also engaged in wholesale copying of all of these elements, among others, and incorporated them into their own site, product packaging, and sales methods. Verified Complaint, ¶¶ 57 – 94. Defendants' theft and subsequent use of these elements give rise to multiple violations of the Lanham Act, any one of forms an independent basis for the entry of preliminary injunction. The following three will

---

[5] Indeed, Defendants' "tweaks" often do more to highlight Defendants' copying than to obscure it. For example, after Defendants copied Plaintiffs' comprehensive "Treatment Guide" in its entirety, they edited Plaintiffs' "Normal" and "Problematic" row labels to the synonyms "No Problems" and "Having Problems." Verified Complaint, ¶¶ 69 – 70. Further, at the bottom of almost every page on Plaintiffs' biosafeone.com is a hyperlink in large, bold print: **"Need Help?  Don't Know What to Order?  Click Here!"** The link takes a user to Plaintiffs' Treatment Guide. At the bottom of almost every page on Defendants' newtechbio.com is the same link, in the same large, bold print, but it reads **"Need Help Deciding What to Order?  Click Here!"** Clicking on the link will take the user to Defendants' infringing Treatment Guide. Verified Complaint, ¶ 87 – 88.

be discussed herein: (1) trade dress infringement; (2) trademark infringement; and (3) trademark dilution.

### 1.    Trade Dress Infringement, 15 U.S.C.A. § 1125(a)

Defendants' theft of Plaintiffs' intellectual property amounts to an infringement of Plaintiffs' rights in the trade dress of their web site, brochures, and packaging. The "trade dress" of a product is its "overall image...includ[ing] features such as size, shape, color or color combinations, texture, [or] graphics." Paddington Corp. v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 582 (2d Cir. 1993).    To establish trade dress infringement, a plaintiff must demonstrate that the defendant's "trade dress is likely to cause confusion in the marketplace" between the plaintiff's and defendant's products. Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576, 578 (2d Cir. 2005).    Whether a "likelihood of confusion" exists is determined pursuant to an eight-factor test set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir.1961) (developing and applying test for trademark infringement claim).    These factors are:

> a) strength of the plaintiff's trade dress;
>
> b) similarity of the trade dresses;
>
> c) proximity of the products in the marketplace;
>
> d) likelihood that the plaintiff will bridge the gap between the products);
>
> e) evidence of actual confusion;
>
> f) the defendant's bad faith;
>
> g) quality of the defendant's product; and
>
> h) sophistication of the relevant consumer group.

See Natural Organics 426 F.3d at 578 (applying Polaroid factors to trade dress infringement and unfair competition claim).    While the Second Circuit has held that a district court should "engage

in a deliberate review of each factor, and, if a factor is inapplicable to a case,…explain why," id. at 579, no single Polaroid factor is dispositive and the analysis "should focus on the ultimate question of whether consumers are likely to be confused." Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004). Here, six of the eight factors indicate that consumers are likely to be confused by Defendants' misappropriation of Plaintiffs' distinctive trade dress. Two of the eight factors are neutral or irrelevant in this context.

### a.    The Strength of Plaintiffs' Trade Dress

The first factor, the strength of Plaintiffs' trade dress, weighs in Plaintiffs' favor. Until Defendants copied it, Plaintiffs' site was unique, not only in its function – the direct sale of industrial strength septic cleaning products to consumers – but also in its design, look and feel. As the Second Circuit wrote in Paddington, describing the trade dress of an ouzo bottle:

> The tone and layout of the colors, the style and size of the lettering, and, most important, the overall appearance of the bottle's labeling, are undeniably arbitrary. They were selected from an almost limitless supply of patterns, colors and designs.

996 F.2d at 584. The court went on to find the bottle "inherently distinctive" and, therefore, strong trade dress. Biosafeone.com's design and layout were also selected from an almost limitless supply of patterns, colors, and designs. It is similarly arbitrary and distinctive and deserving of the same level of protection.

### b.    The Similarity of the Trade Dresses

The second factor, the similarity of the trade dresses at issue, cannot seriously be disputed. As discussed, Defendants intentionally copied substantial portions of Plaintiffs' site in bulk, right down to identical pricing on identical products and the duplication of typographical errors, the apparent result of a mindless cut and paste job. A non-exhaustive list of the myriad

16

similarities between the two sites is set forth in the Verified Complaint, ¶¶ 57 – 94. The specific elements of Plaintiffs' distinctive trade dress, Verified Complaint, ¶ 132, all appear in a confusingly similar form on Defendants' site. Finally, as was the case in the context of Defendants' copyright infringement, whatever token deviations Defendants added to their website are not relevant, as "the test of customer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression." RJR Foods, Inc. v. White Rock Corp., 603 F.2d 1058, 1060 (2d Cir. 1979).

c.      The Proximity of the Products in the Marketplace

The third factor, the competitive proximity of the products sold by the Plaintiffs and Defendants, also requires little explanation as the products compete in the same market fort the same customers. Defendants copied Plaintiffs' trade dress for the very purpose of selling products that Defendants claim perform the same functions as Plaintiffs'. Indeed, when Defendants launched their site in March 2007, they took precise aim at Plaintiffs, aping biosafeone.com and selling their products in the same size containers, for the same price, and with the same usage recommendations as Plaintiffs. As set forth in the Verified Complaint at ¶¶ 97 – 107, Defendants have even diverted web traffic from biosafeone.com to newtechbio.com by purchasing Plaintiffs trademarks as advertising keywords, creating similar online advertisements, and engaging in other activities designed to wrongfully lower Plaintiffs' internet profile and augment Defendants' own.

d.      Likelihood the Plaintiff Will Bridge the Gap

Because the products already compete in the same market, the fourth Polaroid factor, the likelihood that Plaintiffs will someday "bridge the gap" and offer products or services similar to

Defendants' products or services, thus increasing the likelihood for confusion, is not relevant here. See, e.g., Kraft General Foods, Inc. v. Allied Old English, Inc., 831 F.Supp. 123, 130 (S.D.N.Y. 1993) ("Here, Kraft and Allied currently operate in the same market. Consequently, there is no gap to bridge.")

### e.    Evidence of Actual Confusion

The fifth Polaroid factor, evidence of actual confusion, is also of minimal relevance on a motion for a preliminary injunction. Where a plaintiff is seeking injunctive relief – as Plaintiffs are seeking on this motion – proof of actual confusion is unnecessary, especially under these circumstances, where the infringing products have not been on the market for very long. See Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991)("This requirement [to demonstrate actual confusion] must be distinguished from cases brought under the Lanham Act in which only injunctive relief is sought; in those cases the plaintiff need only prove a likelihood of confusion among consumers.").

### f.    Defendants' Bad Faith

The similarities between Plaintiffs' site and Defendants infringing site are so striking that there can be no doubt that the extensive copying here was intentional. The sixth Polaroid factor, the infringer's bad faith, thus weighs in favor of a likelihood of confusion. Indeed, where a defendant has intentionally copied the plaintiff's trade dress, a presumption of likelihood of confusion applies:

> Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion. In determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or dress may indicate bad faith. Where such prior knowledge is accompanied by similarities so strong that it seems plain that

> deliberate copying has occurred, we have upheld findings of bad
> faith.

Paddington, 996 F.2d at 586 -587 (citations omitted).  Defendants here had full knowledge of

Plaintiffs' website's trade dress and misappropriated it for the purpose of operating an unlawful

competing business.  Moreover, as discussed *infra*, Defendants misappropriated the financial,

customer, and supplier information they needed to launch their fraudulent business by holding

themselves out to be Plaintiff Jorgensen's mortgage brokers.

g.    The Quality of the Defendants' Products

The seventh Polaroid factor, the quality of the Defendants' products, focuses less on

confusion, but on the harm such confusion is likely to cause.  While Plaintiffs are unaware of the

relative quality of the actual septic-cleaning products Defendants purport to sell, Defendants'

site, newtechbio.com, has been online only since March 2007.   Moreover, none of the

Defendants had any experience in the septic cleaning or waste management industry prior to the

site's launch.  Verified Complaint, ¶ 51.  In stark contrast, Plaintiffs' site, biosafeone.com, has

been operating continuously for over five years and Plaintiffs have many years experience in the

industry.  Verified Complaint, ¶¶ 14 – 17.  It is thus reasonable to assume that the Plaintiffs

offer, at minimum, superior web site performance, customer service, and expert guidance to their

customers.  See, e.g., TCPIP Holding Co., Inc. v. Haar Comms, Inc., 244 F.3d 88, 102 (2d Cir.

2001) ("If…the [defendant's] site functions badly, or provokes consumer dissatisfaction in any

way, this could harm plaintiff's mark to the extent that consumers believe there is an association

between the two.")  In any event, even if this Court were to assume that Defendants' products,

customer service, and technology were all first-rate – an extremely generous assumption given

that Defendants' site was borne of fraud and misappropriated intellectual property – Plaintiffs

would nonetheless be entitled to an injunction to protect their reputation and goodwill.  See

Mobil Oil Corp. v. Pegasus Petroleum Corp, 818 F.2d 254, 259 – 260 (2d Cir. 1987) ("A senior user may sue to protect his reputation even where the infringer's goods are of top quality.")

    h.  Sophistication of the Relevant Consumer Group.

  The eighth and final Polaroid factor, the sophistication of the relevant consumer group, also indicates a greater likelihood of confusion. The innovation of biosafeone.com – and, indeed, the core concept Defendants hijacked – is the marketing of industrial-strength septic cleaning products directly to consumers. The market for Plaintiffs' products is thus not comprised of waste management or septic cleaning professionals, but ordinary consumers with no specialized knowledge of the industry. These are the very consumers Defendants seek to wrongfully divert to their site via the misappropriation of Plaintiffs' Marks.

  Accordingly, all six relevant Polaroid factors strongly indicate that Defendants' theft of Plaintiffs' trade dress is likely to confuse consumers in the market for septic cleaning products. Plaintiffs are thus likely to succeed on the merits of their trade dress infringement claim and this Court should preliminarily enjoin Defendants from continued infringement pending a trial on the merits and the entry of a permanent injunction.

    2.  Trademark Infringement, 15 U.S.C. § 1125(a)

  Defendants have also misappropriated several trademarks Plaintiffs developed to identify their company, products, and treatment methods. A trademark infringement plaintiff must show that he or she owns an enforceable mark and that the defendant's infringing use of that mark is likely to cause confusion among consumers as to the source of the product or service the mark identifies. See Virgin Enters., 335 F.3d at 146; Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988). If a trademark merits protection, a showing that "consumers are likely to be confused about the

source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate <u>both</u> irreparable harm <u>and</u> a likelihood of success on the merits." <u>Bristol-Myers Squibb Co.</u>, 973 F.2d at 1038 (emphasis added). Accordingly, if a plaintiff can demonstrate a likelihood of consumer confusion, it is entitled to a preliminary injunction on its trademark infringement claim. <u>Id.</u>

As a preliminary matter, Plaintiffs have valid and enforceable trademarks. Plaintiffs have invested in and continuously used their arbitrary and distinctive BIO-SAFE ONE mark since early-2002, garnering widespread recognition in the marketplace. Verified Complaint, ¶ 15, 16, 24, 26, 27. Since that time, Plaintiffs have also operated their online business continuously at www.biosafeone.com, offering high-quality industrial-strength septic cleaners and waste management products directly to consumers. Plaintiffs have invested hundreds of thousands of dollars, along with substantial time, effort and energy, into developing, administering, refining and upgrading biosafeone.com, as well as promoting, advertising and marketing their products and associated marks, such as "Light Shock," "Medium Shock," "Heavy Shock," and "Heavy Sludge Digester." Verified Complaint, ¶¶ 17 – 23. No other company uses the word "Shock" – alone or in conjunction with any other words – for any septic cleaning product or treatment. "Heavy Sludge Digester" is similarly unique; indeed, a Google search for that exact phrase yields only three hits – two for Plaintiffs' product and one for Defendant's infringing product. Verified Complaint, ¶ 93.

Further, Defendants' pilfering of Plaintiffs' Marks presents a substantial likelihood of confusion pursuant to the same eight-factor <u>Polaroid</u> test discussed, *supra* at pp. 15 – 21, in the context of Defendants' infringement of Plaintiffs' trade dress. The discussion, *supra*, of several of the <u>Polaroid</u> factors applies with equal force and in the same manner to Plaintiffs' trade dress

claim. Specifically, the third (proximity of the Plaintiffs' and Defendants' products in the marketplace), sixth (Defendants' bad faith), seventh (the quality of Defendants' product) and eighth (sophistication of the relevant consumer group) factors all weigh heavily in favor of a finding of a likelihood of confusion due to Defendants' infringement of Plaintiffs' trademarks.[6]

Moreover, the two factors that are specific to Plaintiffs' marks (as opposed to trade dress) also weigh in favor of a likelihood of confusion. The first factor in the <u>Polaroid</u> analysis, the strength of the plaintiff's marks, refers to its ability to identify the source of the goods being sold under its aegis. Here, as just discussed, the marks at issue – including Bio-Safe One, biosafeone.com, Light Shock, Medium Shock, Heavy Shock and Heavy Sludge Digester – are inherently distinctive. The combination of the terms "bio," "safe," and "one" is not an obvious one in the context of septic cleaning products. The same can be said of the use of the word "shock" in combination with Light, Medium, or Heavy to brand a Plaintiffs' septic treatment method and "Heavy Sludge Digester" to brand a particularly strong septic cleaning product.

The second factor, the similarity between Plaintiffs' Marks and the infringing marks as they appear on Defendants' site should be self-evident. Defendants' conduct here is nothing short of outright plagiarism. The identical terms "Light Shock," "Medium Shock," "Heavy Shock," and "Heavy Sludge Digester" all appear unaltered on Defendants' site. Even newtechbio.com itself builds on biosafeone.com and is part of Defendants' effort to mislead consumers into believing they are affiliated with – and indeed, offer the newest technology from – Plaintiffs' company.

As with Plaintiffs' trade dress infringement claim, all six relevant <u>Polaroid</u> factors thus indicate a likelihood of confusion also stemming from Defendants' misappropriation of

---

[6] Here, as in the context of Plaintiffs' trade dress infringement claim, the fourth and fifth factors are not particularly relevant.

Plaintiffs' trademarks. This Court should grant Plaintiffs' motion for a preliminary injunction barring Defendants' continued use of Plaintiffs' trademarks.

### 3.    Trademark Dilution, 15 U.S.C.A. § 1125(c)

Plaintiffs' ability to effectively market Bio-Safe products has been compromised by Defendants' dilution of Plaintiffs' intellectual property. To state a dilution claim, a plaintiff must show that: (1) its mark is famous within the meaning of the statute and (2) the defendant's use is likely to cause dilution of that mark. 15 U.S.C.A. § 1125(c); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007).[7] A mark is diluted via either "tarnishment" – a disparagement of the mark's reputation – or "blurring" – a diminished ability of the mark to service as a unique identifier of the plaintiff's goods or services. Id.

Again, Plaintiffs are very likely to succeed on such a claim. Plaintiffs' website has been operating continuously since 2002. Verified Complaint, ¶¶ 15 – 16. Over the past five years, Plaintiffs have developed a robust site, quality products, and a distinct market profile. They have become known in the industry for the delivery of a high-quality product. Verified Complaint, ¶¶ 24 – 27. Further, Defendants' plainly commercial use of the Marks began in March 2007, Verified Complaint, ¶ 50, long after Plaintiffs' Marks became famous.

As a consequence of Defendants' actions, however, consumers are duped into believing they are using Plaintiffs' site, or, at least, one affiliated or sponsored by Plaintiffs. In reality, however, they are at the site of a competitor with no experience in the industry. Defendants' scheme is thus quite likely to disparage Plaintiffs' Marks. At a bare minimum, Defendants are

---

[7] Prior to the amendment of 15 U.S.C.A. 1125(c), effective October 6, 2006, a plaintiff was required to show actual dilution, rather than just a likelihood of dilution to state a federal trademark dilution claim. See Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). As Defendants' website did not go online until March 2007, the amended statute applies here. See Starbucks, supra.

diminishing and diluting the Marks' ability to identify Plaintiffs' products and the services provided exclusively through biosafeone.com.

Plaintiffs are accordingly likely to succeed on the merits of their claim for trademark dilution under 15 U.S.C. § 1125(c). This Court should thus enter a preliminary injunction restraining Defendants from doing further irreparable harm to Plaintiffs' valuable intellectual property.

**C.    Breach of Fiduciary Duty and Misappropriation of Corporate Opportunities**

In addition to violations of federal copyright and trademark and trade dress protection laws, Defendants have also breached common law fiduciary duties owed to Plaintiffs. Where any person enters into a contract to act as one's agent, as the Defendants did here, the agent is prohibited from "acting in any manner inconsistent with his agency or trust" and binding the agent "to exercise the utmost good faith and loyalty in the performance of his duties." Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 416, 729 N.Y.S.2d 425 (2001)(quotations omitted). Agents are thus fiduciaries who "must act in accordance with the highest and truest principles of morality." Id. (quoting Elco Shoe Mfrs. v Sisk, 260 N.Y. 100, 103, 183 N.E. 191 (1932)). More specifically, New York imposes fiduciary duties upon brokers to act with honesty and candor toward, and in the best interests of, their principals. N.Y. Jur. 2d, Brokers § 27 (2007).

Here, Defendants held themselves out to be Plaintiffs' mortgage brokers and, in furtherance of their fraudulent scheme to misappropriate and convert Plaintiffs' property, committed outrageous breaches of their fiduciary duties to act in Plaintiffs' best interests, to accord Plaintiffs honesty and candor, to refrain from acting in a manner contrary to Plaintiffs' interests, to exercise fidelity and good faith in all matters within the scope of the Defendants' employment, including the protection of personal and commercial confidences. Verified

Complaint, ¶¶ 31 – 51.   Taken together, or even individually, these facts indicate a strong likelihood of success on Plaintiffs' claim for breach of fiduciary duty.

Defendants continue to profit at the expense of Plaintiffs.  In plain and ongoing violations of their fiduciary duties, using information gained while acting as Plaintiffs mortgage brokers, Defendants maintain and benefit from relationships with Plaintiffs' suppliers, advertisers, vendors, and customers.  Plaintiffs are entitled to a preliminary injunction to stop Defendants from further profiting at Plaintiffs' expense.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request preliminary injunctive relief in the form of an Order:

(1)    Enjoining Defendants, their agents, servants, representatives, successors, assigns, affiliates, attorneys, employees, nominees and others acting in concert or participation with them, from:

a.    operating and conducting any business under the website located at the domain name www.newtechbio.com or any similar website;

b.    impersonating, stealing, or otherwise using Plaintiffs' corporate identity;

c.    contacting and/or communicating with Plaintiffs' customers, suppliers, vendors and advertisers;

d.    using Plaintiffs' Marks or any other mark or design which is a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks;

e.    using Plaintiffs' Marks, trade name and/or identity, or any variations of Plaintiffs' Marks, trade name and/or identity, or any other mark confusingly similar to such Marks, trade name and/or identity or likely to cause dilution of the distinctiveness of the Marks or injury to Plaintiffs' business reputation, in connection with any service or products, sham service or sham products, or any other improper purpose, on the internet or in any other medium;

f.    using any other trademark, service mark, trade name, corporate name, word, or symbol, or doing any other acts, likely to induce the belief that Defendants are in any way connected, endorsed, sponsored, employed by or associated with Plaintiffs or with Plaintiffs' products, services, website or businesses or doing any other acts likely to injure Plaintiffs' business reputation or to dilute the distinctive quality of Plaintiffs' Marks, Website, corporate identity and business;

g.    purchasing Plaintiffs' Marks or continuing to use Plaintiffs' Marks as internet advertising keywords;

h.    using any and all computer code, text, images, graphics, design or photographs taken or copied from Plaintiffs' Website, including, without limitation, all code, text, images, graphics, design or photographs referenced herein, and any work derived or comprising any element thereof; and

i.    otherwise engaging in acts of unfair competition, consumer fraud, dilution of trademark, and/or interference with Plaintiffs' business relationships.

(2)    Directing Defendants, their agents, servants, representatives, successors, assigns, affiliates, attorneys, employees, nominees, and others acting in concert or participation with them to immediately return all confidential information, intellectual property and/or other valuable property, data or information stolen from or otherwise belonging to Plaintiffs.

Dated:  New York, New York
        August 6, 2007

By:    _____
       Darren Oved, Esq. (DO 9337)
       Thomas Freedman (TF 1309)
       OVED & OVED LLP
       *Attorneys for Plaintiffs*
       101 Avenue of the Americas, 15th Floor
       New York, New York  10013
       Tel:  212.226.2376
       Fax:  212.226.7555

27

Case No.:  07 CV 6764
(DC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIOSAFE-ONE, INC. d/b/a
WWW.BIOSAFEONE.COM
and CHRISTOPHER JORGENSEN,

       *Plaintiffs,*

   -against-

ROBERT HAWKS; BRAD SKIERKOWSKI;
NEWTECHBIO, USA a/k/a BRAD & COMPANY,
INC. d/b/a WWW.NEWTECHBIO.COM;
WWW.JUMBOMORTGAGES101.COM
a/k/a JUMBOMORTGAGES.NET; and
BCI FUNDING GROUP,

       *Defendants.*

---

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTION

---

## OVED & OVED LLP

*Attorneys for Plaintiffs*:
*Office Address & Tel. No.:*
101 Avenue of the Americas, 15th Floor
New York, New York  10013
Tel: 212.226.2376

---

Dated:  August 6, 2007