UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BIOSAFE-ONE, INC. d/b/a www.biosafeone.com
and CHRISTOPHER JORGENSEN,

                          Plaintiffs,

          -v-
                                                  07 CV 6764 (DC)(DFE)

ROBERT HAWKS; BRAD SKIERKOWSKI;
NEWTECHBIO, USA a/k/a BRAD & COMPANY,
INC., d/b/a www.newtechbio.com;
www.jumbomortgages101.com a/k/a
JUMBOMORTAGES.NET; and
BCI FUNDING GROUP, et al.,

                         Defendants.
------------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF AN INJUNCTION AND IN RESPONSE TO DEFENDANTS' SUBMISSION**

Dated: New York, New York
       September 25, 2007

                                            Vik Pawar, Esq (VP9101)
                                            321 Broadway, Suite 200
                                            New York, New York 10007
                                            212-571-2266 (phone)
                                            212-656-1645 (fax)
                                            vik@pawarlaw.com (email)
                                            *Attorney for Plaintiff*

# TABLE OF CONTENTS

                                                            **Page No.**

| | | | |
|---|---|---|---|
| | **TABLE OF AUTHORITIES** | | i |
| I | **PRELIMINARY STATEMENT** | | 1 |
| II | **ARGUMENT** | | 1 |
| | A. | Breach of Fiduciary Duty and Unfair Competition | 1 |
| | B. | Trademark and Copyright Infringement | 3 |
| III | **OPPOSITION TO DEFENDANTS' MOTION** | | 7 |
| | A. | Plaintiffs properly exercised their rights under the DMCA | 7 |
| IV | **INJUNCTION IS AN APPROPRIATE REMEDY** | | 9 |
| V | **SANCTIONS** | | 10 |
| | A. | Defendants should be sanctioned | 10 |
| VI | **CONCLUSION** | | 11 |

# TABLE OF AUTHORITIES

Page No.

**United States Supreme Court**

*Two Pesos, Inc. v. Taco Taco Cabana, Inc.*,
505 U.S. 763 (1992).................................................................... 3

**United States Federal Court of Appeals**

*American Institute of Chemical Engineers v. Reber-Friel Co.*,
682 F.2d 382 (2nd Cir. 1982)........................................................ 2

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
730 F.2d 61, 63 (2d Cir. 1984)..................................................... 9

*MBNA America Bank, N.A.*,
340 F.3d 1328, 67 U.S.P.Q.2d 1778 (Fed. Cir. 2003).......................... 3

*S & K Sales Co. v. Nike, Inc.*,
816 F.2d 843 (2d Cir. 1987)......................................................... 1

*SEC v. Tome*,
833 F.2d 1086 (2nd Cir. 1987)...................................................... 9

*Sheldon v Metro-Goldwyn Pictures Corp.*,
81 F.2d 49 (2d Cir.), *cert. denied*, 298 U.S. 770 (1936)....................... 4

*United States v. Carson*,
52 F.3rd 1173 (2nd Cir. 1995)....................................................... 9

*Zatarian's, Inc. v. Oak Grove Smokehouse, Inc.*,
698 F.2d 786 (5th Cir. 1983)........................................................ 3

**United States District Court**

*Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*,
420 F. Supp. 177 (S.D.N.Y. 1976)................................................. 4

*Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*,
678 F. Supp. 424 (S.D.N.Y. 1987)................................................ 2

*Katz Dochrermann & Epstein, Inc. v. Home Box Office*,
1999 U.S. Dist. LEXIS 3971, 1999 WL 179603,(S.D.N.Y. Mar. 31, 1999)...... 2

**United States Statutes**

17 U.S.C. §512............................................................................ 7

28 U.S.C. §1927 ......................................................................... 10

**Federal Rules of Civil Procedure**

Rule 11..................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum in reply to defendants' opposition and in further support of the underlying motion seeking a permanent injunction or a temporary restraining order[1] based on earlier submissions and on evidence that defendants made material misrepresentations to this Court.

## ARGUMENT

Defendants intentionally decided to compete with plaintiffs by using confidential information obtained during Plaintiff's application for mortgage. This misappropriation and misuse of confidential information constitutes a breach of fiduciary duty and violations of the Lanham Act and the Copyright Act. Having no experience in plaintiffs' line of business, defendants continue to unfairly compete against plaintiffs and continue to engage in blatant copyright and trademark infringement as is explained below:

### A. Breach of Fiduciary Duty and Unfair Competition

Defendants should be precluded from engaging in any competitive enterprise against the plaintiffs because the information used to develop their enterprise was derived from their fiduciary relationship with plaintiffs and, which constitutes unfair competition.

The elements of a claim for inducing or participating in a breach of fiduciary duty are: (1) a breach by a fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that the plaintiff suffered damages as a result of the breach. *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847 (2d Cir. 1987).

Under New York law, to establish a claim for unfair competition it must be shown "that the defendant misappropriated the fruit of plaintiff's labors and expenditures by

---

[1] Plaintiffs would much rather prefer a permanent injunction but if the Court reserves decision on the motion, plaintiffs respectfully request a Temporary Restraining Order.

1

obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Katz Dochrermann & Epstein, Inc. v. Home Box Office,* 1999 U.S. Dist. LEXIS 3971, *9, No. 97 Civ. 7763 (TPG), 1999 WL 179603, *4 (S.D.N.Y. Mar. 31, 1999); *see also Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.,* 678 F. Supp. 424, 429 (S.D.N.Y. 1987) (the essence of a claim for unfair competition is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods"); *see also American Institute of Chemical Engineers v. Reber-Friel Company,* 682 F.2d 382 (2nd Cir. 1982) (in New York, use of information, i.e. customer lists, acquired through years of "business effort," "enterprise," and "foresight" will be enjoined where not readily available outside of the business).

As plaintiffs' mortgage brokers, defendants had a fiduciary obligation to exercise the utmost good faith and loyalty in the performance of their duties. These defendants failed to exercise "good faith" and "loyalty," and, instead, took the information provided in confidence and used it to destroy plaintiffs' livelihood.

Not only did defendants deceive plaintiffs, but they are also attempting to deceive this Court. For example, defendant Hawks swears in his declaration that he never initiated any communication with plaintiffs' vendor.[2] This is in stark contrast to plaintiff's declaration[3] that he had numerous in-depth conversations with his vendor representative who told him about defendants' communications with them.[4] Defendants Hawks further swears under oath that defendants have not initiated any contact with plaintiff for over eighteen

---

[2] Hawks' Declaration ¶13.
[3] Jorgensen Declaration ¶¶5, 7, 8, 10, 11.
[4] That representative Morris Gills has conveyed his intention to testify as to the truth. If not, plaintiffs are prepared to issue federal subpoenas to ensure compliance.

2

months prior to launching their site.[5] This false statement is easily refuted by the telephone bills and emails that show that communications persisted even until this year.[6] Interestingly, defendant Hawks also swears that plaintiff paid for placement of certain keywords to be placed on a web page.[7] This speaks volumes as to defendants' continued access to plaintiffs' web logs and account.

As plaintiff Jorgensen explains in his Declaration, he gave defendants virtually unfettered access into his personal life. From web logs to bank accounts, this information was to be kept safe and sound by his fiduciary agents. Not only did defendants breach this duty, but defendants are now attempting to wipe out plaintiffs' livelihood by lying to the Court. These actions should not and must not be tolerated by this Court.

B.  **Trademark and Copyright Infringement**

Defendants continue to mislead the Court by contending that certain terms procured from plaintiffs' web site, such as "sludge digester," "shock treatment," "Restoring Failed Drain Fields," appear on other web sites. Defendants, nonetheless, acknowledge that these coined phrases were procured and copied from plaintiffs' website.

In addition, defendants purchased the marks of plaintiffs, i.e. "biosafe," "biosafeone," as well as other key words from plaintiffs' website. This appears to have diverted internet traffic away from plaintiffs' website. Indeed, plaintiffs' customers continue to be confused.[8] Defendants gained sole right, title, and interest in those names, as well as all other aspects and the "look and feel" of plaintiffs' website.

---

[5] Hawks' Declaration ¶18.
[6] Jorgensen Declaration ¶¶2-4.
[7] Hawks' Declaration ¶29.
[8] Jorgensen Declaration ¶17.

3

Plaintiffs' marks indicated convey information about both the quality and characteristic of plaintiffs' product. *See MBNA America Bank, N.A.*, 340 F.3d 1328, 1332, 67 U.S.P.Q.2d 1778 (Fed. Cir. 2003). They have acquired "secondary meaning," and are identified with "a particular source," which is the plaintiffs' web site, now copied by defendants'. *Two Pesos, Inc. v. Taco Taco Cabana, Inc.*, 505 U.S. 763 (1992). The marks, have been developed through long use and after strenuous development at great expense to plaintiffs.[9] These marks have come to be known by the consuming public "as specifically designating that product." *Zatarian's, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983). Until defendants copied it, plaintiffs' website was unique, not only in its function – the direct sale of industrial strength septic cleaning products to consumers – but also in its design, look and feel. The design and layout of plaintiffs' website www.biosafeone.com were selected from an almost limitless supply of patterns, colors, and designs, which are arbitrary and distinctive, deserving of trademark protection. Defendants have violated plaintiffs' trade dress including the following: from plaintiffs' distinctive box, bucket, four-bubble design to the look and feel of plaintiffs' website.

Defendants are candid enough to admit to copying plaintiffs' website. However, now they dishonestly state that the similarities have been eliminated, but they have not.[10] While defendants try to divert attention away from the original infringing website, the current website continues to be the infringing progeny just as if it were the "fruit of the poisonous tree," to borrow from a criminal law concept that is apt under the circumstances.

---

[9] Jorgensen Declaration ¶19.
[10] See Exhibits 1 through 5, Certification of Odette J. Wilkens, Esq., submitted as Exhibt 2 to Declaration of Vikrant Pawar, Esq.

4

In a seminal case, the Second Circuit held that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 770 (1936). Defendants' arguments that their website is sufficiently attenuated does not negate infringement. To view defendants' argument otherwise would reward defendants for infringing first and attenuating later. Moreover, the lack of specific intent to infringe is not a defense. *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976).

In addition, although the concept of "before" and "after" images may not be novel, defendants directly copied from plaintiffs.[11] They simply reversed the shading in plaintiffs' photographs from dark to light with minor modifications to create their own. The hole in defendants' "before" image matches the location and dimension of plaintiffs' biomat, reversing shading from dark to light. Defendants' "after" image again simply reverses shading in the center from dark to light. Otherwise, when defendants' and plaintiffs' images are superimposed upon each other, the circular dimensions appear similar.[12]

The unique expressions contained in what defendants glibly describe as "building blocks" are protected copyrighted works despite defendants' attempt to minimize their importance. Defendants' claim to have found over 40 websites selling similar products does not excuse infringement. Defendants' box, bucket, label design and four-bubble design, in each instance derived from plaintiffs' distinctive works, appears on almost every page, if not every page, of defendants' websites. Defendants' box image is similarly sized and only

---

[11] Exhibit 6 of Certification of Odette J. Wilkens, Esq., shows defendants' and plaintiffs' before and after images as they appear on their respective websites, and a side-by-side comparison that also include the images superimposed upon each other.

[12] See Id.

5

cosmetically colored white.[13] Defendants' bucket is virtually identical in shape, color and shading to plaintiffs' bucket with the omission of the bucket handle and horizontal line near the lid.[14] Plaintiffs' distinctive white label with blue lettering identifying the brand name is featured prominently on its box and bucket. Defendants have simply replaced plaintiffs' label with a similar label and replaced plaintiffs' brand name with their own. Defendants copied plaintiffs' four-bubble design to the left of plaintiffs' brand name "Bio-Safe One" to create their own label and logo design by slightly rotating plaintiffs' bubbles, isolating the lower two bubbles with 2 lines, and coloring them yellow.[15]

Defendants cannot mask their plagiarism by hiding within a crowd of plagiarists. Plaintiffs' graphic designer created plaintiffs' septic tank diagram as early as 2002.[16] That others copied the exact design does not justify defendants purloining that design by, again, simply reversing shading, this time from light to dark with only cosmetic changes. Indeed, defendants even copied the house, which the designer acknowledges was a design mistake. Similarities of competitive comparison charts demonstrate a similar look and feel as that of plaintiffs.[17] That defendants suggest plaintiffs' chart is "quite similar" to another website "which was online before that of plaintiffs" stretches credulity.[18] Indeed, if defendants' chart had been more similar to the chart in that other website, defendants would likely not be infringing plaintiffs' website. However, they might be infringing the other website.

---

[13] Exhibit 7 of Certification of Odette J. Wilkens, Esq., comparing plaintiffs' and defendants' boxes.
[14] Exhibit 8 of Certification of Odette J. Wilkens, Esq., When superimposed, both buckets appear virtually identical in shape and color as seen in the white image against blue background.
[15] Exhibit 9 of Certification of Odette J. Wilkens, Esq.
[16] Exhibit 10 of Certification of Odette J. Wilkens, Esq. (Flanigan's Affidavit with septic tank design).
[17] Exhibit 11 of Certification of Odette J. Wilkens, Esq. (plaintiffs' and defendants' comparison charts).
[18] Defendants' memorandum, p.10 referring to http://www.baproducts.com/1flush.htm.

Defendants would have us believe that any expression using a singular word is not protected just because that single word is used in protected expression. For example, although "shock" is not an invented word, when used with descriptive words such as "Light Shock," "Medium Shock," and "Heavy Shock," and placed in quotes to coin the phrase, those words take on a different expression and meaning. Defendants altering adjoining words to ones that are synonymous with plaintiffs' original expression is still derivative of plaintiffs' original expression.[19] Similarly apposite is plaintiffs' coined expression, "Heavy Sludge Digester."

These are all diversionary tactics by defendants to continue to muddy the water for the Court and divert attention from their continued misrepresentations.

## OPPOSITION TO DEFENDANTS' MOTION

A.  **Plaintiffs properly exercised their rights under the DMCA**

Plaintiffs have appropriately availed themselves of the protections afforded by the Digital Millennium Copyright Act ("DMCA") to notify hosting companies of the infringement.[20] Even defendants produced a letter from counsel for one hosting company, Add2Net, Inc. doing business as Lunarpages, that plaintiffs' notice fully complied with DMCA requirements:[21]

> "As you are aware, our client was provided with a properly formatted Digital Millennium Copyright Act ... notice pursuant to 18 U.S.C. §512(c)(3)."

---

[19] Exhibit 3 of Certification of Odette J. Wilkens, Esq.(Treatment Guides).
[20] Exhibit 12 of Certification of Odette J. Wilkens, Esq. (plaintiffs' DMCA notices).
[21] Exhibit 13 of Certification of Odette J. Wilkens, Esq. purportedly a letter dated August 28, 2007 from counsel of Add2Net,Inc. doing business as Lunarpages to plaintiffs' counsel.

7

Defendants, quite boldly and callously, assert that their infringing websites should be "re-activated," after having been properly de-activated under the DMCA. Defendants falsely deny continued copyright infringement in their effort to thwart the DMCA.

Defendants' attempt to side-track the DMCA process is unavailing.[22] Defendants volubly state that their websites were "free of all material objected to by plaintiffs" at the time that DMCA notices, dated August 21 and August 27, 2007, were sent to the hosting companies. This is plainly false. Even giving defendants the benefit of the doubt, defendants' website, www.newtechbio.com, printed from the Internet on August 31, 2007 beginning at about 1:57 a.m., shows that plagiarism existed and was substantial even nine days after the DMCA notice was sent to that website's hosting company.[23] The website www.cloggeddrainfield.com was also infringing.

Defendant Brad Skierskowski misrepresents in a letter apparently sent on August 27, 2007 to Godaddy.com that the hosting company for the website "cloggeddrainfield.com," responding to plaintiffs' DMCA notice, that:

> "... under penalty of perjury ... my website ... www.cloggeddrainfield.com contains no material within that is alleged to contain copyright infringement by the accuser. Any and all further claims of copyright infringement, which may arise, are completely unjustified and false. I ... am fully in compliance with all copyright aspects of the site."[24]

Continuing an apparent pattern of misrepresentation, defendant Brad Skierskowski also falsely states to that hosting company that this Court has ruled in defendants' favor:

---

[22] Exhibit 14, Odette Wilkens' Certification (correspondence between plaintiffs' counsel and defendants' counsel).

[23] The exact printing time is significant since defendants attached to their Memorandum printouts from the internet of their website, www.newtechbio.com, that, coincidentally, was printed only about 13 hours later that exact day apparently beginning at 3:06 p.m. -- an apparent attempt to evade detection. See Exhibits 1 through 5 of Certification of Odette J. Wilkens, Esq.

[24] Exhibit 15, of Certification of Odette J. Wilkens, Esq.

8

> "Federal Honorable Judge Chin ruled against the plaintiff this day at approximately 11:00 a.m. this day August 27, 2007 in our favor against the motion to shut down the web site."

In fact, the motion for preliminary injunction has not been ruled upon, and is scheduled for a hearing on October 2, 2007. Apparently, the DMCA notice sent to the hosting company, Godaddy.com, for defendants' website, www.cloggeddrainfield.com also complied with the law since that provider also disabled the website.[25]

## INJUNCTION IS AN APPROPRIATE REMEDY[26]

Defendants' misappropriation and misuse of confidential information continues unabatedly. There is every indication that the copyright and trademark infringement, and other efforts, including purchase of plaintiffs' marks, contact of plaintiffs' supplier, and "click fraud", using confidential information will continue unabated unless enjoined immediately by this Court. This egregious and intentional wrongdoing is "highly suggestive" of the "likelihood" of future infringements, warranting restraint of the defendants as requested. Further, the infringements appear to be systematic and repeated, and not "an isolated occurrence." *United States v. Carson*, 52 F.3rd 1173, 1184 (2nd Cir. 1995).

As the plaintiffs have established in all the submitted papers, plaintiffs will continue to suffer irreparable harm from plummeting sales and loss of current and potential customers. *SEC v. Tome*, 833 F.2d 1086 (2nd Cir. 1987). The Second Circuit recognizes that the loss of "trade secrets" is immeasurable in terms of money damages (*see FMC Corp. v.*

---

[25] In another apparent attempt to evade the DMCA, defendants appear to have easily switched to an off-shore hosting company in Panama City, Republic of Panama, and are able to unabashedly and intentionally continue to violate U.S. copyright law and divert revenues away from plaintiffs. See Exhibit 16 of Certification of Odette J. Wilkens, Esq.

[26] See footnote 1, *supra*.

9

*Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (per curiam) and that "[a] trade secret once lost is, of course, lost forever", and is thus considered "irreparable harm.")

The defendants have declared their innocence of these acts in an attempt to mislead this Court and web hosting companies. In fact, the defendants have engaged in "extra-judicial" activities to further intimidate the plaintiffs. See *SEC v. Tome*, supra at 833 F.2d 1086, 1095. For example, defendants have threatened plaintiff Chris Jorgensen's life and livelihood.[27]

### SANCTIONS

**A.     Defendants should be sanctioned**

If the Court finds that defendants submitted false information to this Court in an effort to stall relief sought by the plaintiffs, then the Court has the discretion to impose sanctions.[28]

Plaintiffs are mindful that under Fed. R. Civ. P. 11(c)(2), a motion for sanctions must be made separately from this motion. In addition, prior to application for such a motion, the offending party must be afforded twenty-one (21) days to withdraw the challenged submission. However, under Rule 11(c)(3), this Court may order the party to show cause why the "conduct specifically described in the order has not violated Rule 11(b)." Misrepresentations to the Court should not be tolerated. It is even more egregious that these false statements to the Court delayed an earlier application for a temporary restraining order. Plaintiffs *do not* fault defense counsel for defendants' conduct. Plaintiffs are hopeful that defense counsel will address these matters swiftly to prevent plaintiffs from seeking relief under 28 U.S.C. § 1927.

---

[27] Jorgensen Declaration ¶ 17, 18.
[28] Since it appears that defendant may have perjured himself, the matter could be referred to the United States Attorney's Office, plaintiffs leave this issue up to the discretion of the Court.

10

## CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court grant the relief sought in plaintiffs' underlying motion and the additional relief sought in this reply and for any other such relief, as the Court may deem just and appropriate.

**Dated:** September 25, 2007
New York, New York

_/s/ Vik Pawar_
Vik Pawar, Esq (VP9101)
321 Broadway, Suite 200
New York, New York 10007
212-571-2266 (phone)
212-656-1645 (fax)
vik@pawarlaw.com (email)

11