UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x
                                     :
BIOSAFE-ONE, INC. d/b/a
www.biosafeone.com and               :
CHRISTOPHER JORGENSEN,
                                     :
              Plaintiffs,                      **MEMORANDUM DECISION**
                                     :
         - against -                          07 Civ. 6764 (DC)
                                     :
ROBERT HAWKS et al.,
                                     :
              Defendants.
                                     :
- - - - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____                   │
│ DATE FILED: 7-22-09              │
└─────────────────────────────────┘
```

**APPEARANCES:**          VIVIAN M. WILLIAMS & ASSOCIATES, P.C.
                             By:  Vivian M. Williams, Esq.
                          14 Wall Street, 20th Floor
                          New York, New York  10005
                          Attorneys for Plaintiffs

                          LESSLER & LESSLER
                             By:  Arthur L. Lessler, Esq.
                          540 Old Bridge Turnpike
                          South River, New Jersey  08882
                          Attorneys for Defendants

**CHIN, District Judge**

          Plaintiffs Bio-Safe One, Inc. ("Bio-Safe") and

Christopher Jorgensen, Bio-Safe's owner, created a website,

www.biosafeone.com, which they use to market Bio-Safe's

industrial-strength septic system cleaning supplies.  Plaintiffs

have operated the website since 2001.

          In 2005, Jorgensen was looking for a mortgage and hired

defendants Robert Hawks and Brad Skierkowski, who at the time

were mortgage brokers.  Defendants' relationship with Jorgensen

ended in late 2005.  Approximately eighteen months later, in

April 2007, Hawks and Skierkowski formed a company called

Newtechbio, which sold industrial-strength septic system cleaning

supplies, primarily through a new website they created, www.newtechbio.com.

Plaintiffs commenced this action against Hawks, Skierkowsi, and their associated companies on July 26, 2007, asserting a variety of claims arising out of what plaintiffs claim was defendants' wholesale theft of plaintiffs' business. Shortly thereafter, plaintiffs moved for a preliminary injunction under Federal Rule of Civil Procedure 65(a).

In an opinion dated November 29, 2007 (the "Prior Decision"), I denied plaintiffs' motion for a preliminary injunction, holding that they were unlikely to succeed on the merits of their claims. See Biosafe-One, Inc. v. Hawks et al., 524 F. Supp. 2d 452 (S.D.N.Y. 2007). I also granted defendants' cross-motion for a preliminary injunction and barred plaintiffs from interfering in any way with defendants' website.

Defendants now move for summary judgment dismissing the complaint. Plaintiffs move for summary judgment dismissing defendants' counterclaim. Defendants move for leave to file a supplemental counterclaim. Both parties move for sanctions pursuant to Federal Rule of Civil Procedure 37.

For the reasons set forth below, defendants' motion for summary judgment dismissing the complaint is granted, plaintiffs' motion for summary judgment dismissing the counterclaim is granted, defendants' motion for leave to file an amended counterclaim is denied, plaintiffs' motion for sanctions is denied, and defendants' motion for sanctions is granted.

-2-

## BACKGROUND

### A.  Facts

For a full recitation of the facts of this case, see the Prior Decision.  Biosafe-One, Inc., 524 F. Supp. 2d at 459-62.  For the purposes of these motions for summary judgment, when considering each side's motion, I construe the facts in the light most favorable to the other party.

### B.  Procedural History

Plaintiffs filed the complaint on July 26, 2007, asserting, as the Court can best discern, the following twenty-five causes of action:  (1) federal copyright infringement; (2) federal trade dress infringement; (3) federal trademark infringement; (4) federal trademark dilution; (5) breach of fiduciary duty; (6) misappropriation of corporate opportunities; (7) fraud; (8) intentional interference with prospective economic advantage; (9) breach of contract; (10) use of plaintiffs' name with intent to deceive; (11) infringement of plaintiffs' protected trade name and mark; (12) injury to plaintiffs' business reputation and dilution; (13) deceptive business practices; (14) state copyright infringement; (15) consumer fraud; (16) unfair competition; (17) false advertising; (18) identity theft; (19) improper acquisition and use of consumer report; (20) conversion; (21) trespass to chattels; (22) unjust

-3-

enrichment; (23) common law unfair competition; (24) prima facie
tort; and (25) civil conspiracy.[1]

Plaintiffs moved for a preliminary injunction on August
13, 2007. Defendants cross-moved for their own preliminary
injunction on September 12, 2007.

On September 28, 2007, the defendants answered the
complaint and asserted a counterclaim. The counterclaim
concerned two notices plaintiffs sent to www.newtechbio.com's
hosting companies pursuant to the notice provision of the Digital
Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 512(c)(3),
informing the hosting companies that defendants' website violated
plaintiffs' copyrights and trademarks. Defendants alleged that
this notice violated the following provision of the DMCA:

> Any person who knowingly materially
> misrepresents . . . that material or activity
> is infringing . . . shall be liable for any
> damages, including costs and attorneys' fees,
> incurred by the alleged infringer, by any
> copyright owner or copyright owner's
> authorized licensee, or by a service
> provider, who is injured by such
> misrepresentation, as the result of the
> service provider relying upon such
> misrepresentation in removing or disabling
> access to the material or activity claimed to

---

[1]    Attorneys representing plaintiffs should realize that
the pleading of numerous causes of action -- here, twenty-five --
is not a sign of strength. To the contrary, a kitchen-sink
approach is often a sign of weakness, an admission that no claim
has merit. Cf. R. Jackson, "Advocacy Before the Supreme Court:
Suggestions for Effective Case Presentation," in Advocacy and the
King's English 216 (1960) ("The mind of an appellate judge is
habitually receptive to the suggestion that a lower court
committed an error. But receptiveness declines as the number of
assigned errors increases. Multiplicity hints at lack of
confidence in any one.").

-4-

>           be infringing, or in replacing the removed
>           material or ceasing to disable access to it.

17 U.S.C. § 512(f).

I held an evidentiary hearing on the motions for a
preliminary injunction on October 2, 2007, and issued my decision
on November 29, 2007, denying plaintiffs' motion and granting
defendants' cross-motion.

The parties engaged in discovery, with disagreements at
every turn.  The primary points of disagreement revolved around
plaintiffs' refusal to meaningfully respond to defendants'
discovery demands.  For example, plaintiffs objected to providing
such basic information as their tax returns and a list of their
expected witnesses at trial.  (5/12/08 Tr. at 13-15).  In their
response to defendants' interrogatories, plaintiffs stated that
providing information regarding their damages "is not appropriate
at this stage" and amounted to a "fishing expedition" that was
"[o]utside scope of subject matter of litigation."  (Pl.
Interrog. Resp. at 4, 8).

## DISCUSSION

There are five motions before the Court:  (1)
defendants' motion for summary judgment dismissing the complaint;
(2) plaintiffs' motion for summary judgment dismissing
defendants' counterclaim; (3) defendants' motion for leave to
file a supplemental counterclaim; (4) plaintiffs' motion for
sanctions; and (5) defendants' motion for sanctions.  I first

discuss the standard applicable to summary judgment, and then
address each motion in turn.

## A. Summary Judgment Standard

The standards governing motions for summary judgment
are well-settled. A court may grant summary judgment only where
there is no genuine issue of material fact and the moving party
is therefore entitled to judgment as a matter of law. See Fed R.
Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 585-87 (1986). Summary judgment should be
denied "if the evidence is such that a reasonable jury could
return a verdict" in favor of the non-moving party. See NetJets
Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d
Cir. 2008). In deciding a motion for summary judgment, the Court
must construe the evidence in the light most favorable to the
non-moving party and draw all reasonable inferences in the non-
moving party's favor. In re "Agent Orange" Prod. Liab. Litig.,
517 F.3d 76, 87 (2d Cir. 2008). The non-moving party cannot,
however, "escape summary judgment merely by vaguely asserting the
existence of some unspecified disputed material facts, or defeat
the motion through mere speculation or conjecture." W. World
Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)
(internal citations and quotations omitted).

## B.  Defendants' Motion for Summary Judgment Dismissing the Complaint

### 1.  Claims Addressed In the Prior Decision

As to plaintiffs' claims for copyright infringement, trademark infringement, trade dress infringement, trademark dilution, breach of fiduciary duty, unfair competition, and misappropriation of corporate opportunities, plaintiffs have not adduced any evidence to alter my conclusion, set forth in the Prior Decision, that they are unlikely to suceed on the merits of these claims. Biosafe-One, Inc., 524 F. Supp. 2d at 461-68. Plaintiffs only submit two additional pieces of evidence in support of their claim for trademark infringement, but they are insufficient to create a genuine issue for trial.

First, plaintiffs submit a September 26, 2007 email from one of plaintiffs' customers who inquired whether www.biosafeone.com and www.newtechbio.com were related. (Pl. Ex. I).  Plaintiffs argue this email proves likelihood of confusion. Plaintiffs are mistaken, as the law is clear that "[i]nquiries about affiliation alone are not enough to find 'actual confusion.'" Gross v. Bare Escentuals Beauty, Inc., No. 03 Civ. 3089 (RLC), 2008 U.S. Dist. LEXIS 94093, at *17 (S.D.N.Y. Nov. 19, 2008) (quoting Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir. 2001)).  Moreover, plaintiffs have only submitted one such inquiry.

Second, in his declaration, Jorgensen states that "[a] number of Plaintiffs' customers and others in the industry called

-7-

Plaintiffs explaining that Defendants' competing website caused them to confuse that site with Plaintiffs' website." (Jorgensen Decl. ¶ 16).  Plaintiffs do not, however, submit affidavits from any of these customers.  Without such affidavits the Court cannot consider these statements, which are classic hearsay, as they are out-of-court statements being offered for the truth of the matter asserted.  See Feingold v. New York, 366 F.3d 138, 155 n.17 (2d Cir. 2004) (court may not consider hearsay on summary judgment).

On the record before the Court, no reasonable jury could find for plaintiffs on any of these claims.  Accordingly, the claims addressed in the Prior Decision are dismissed.

## 2.  **Claims Not Addressed in the Prior Decision**

Defendants move for summary judgment dismissing the entire complaint, but do not address most of the twenty-five claims contained in the complaint.  The Court has therefore undertaken its own review of the record in this case to determine if there is sufficient evidence in the record from which a reasonable jury could find for plaintiffs on any of their claims. This review entailed reviewing the deposition transcripts, affidavits, declarations, and other documentary evidence the parties submitted.  It also entailed vigorously scrutinizing the factual citations provided by the parties in support of their allegations.  Having conducted this review, I conclude that a reasonable jury could not find for plaintiffs on any of their twenty-five claims.

-8-

Plaintiffs' evidence in this case consists of little
more than speculation, conclusory statements, and legal
conclusions offered under the guise of "evidence." The Jorgensen
declaration, for example, contains no specific evidence to
support any of plaintiffs' claims. The following examples are
representative:

> 22. At all relevant times Plaintiffs were
> under a firm understanding that Defendants
> engaged in copying and displaying Plaintiffs'
> intellectual property without authorization
> and just compensation. Plaintiffs are still
> of firm conviction that Defendants infringed
> various intellectual property rights of
> Plaintiffs.
>
> . . .
>
> 25. For several years Plaintiffs made
> significant investments into their business
> and at a point when Plaintiffs were beginning
> to see returns from years of hard work and
> investment, Defendants appropriated
> Plaintiffs' trade secrets and proprietary
> information to reap the fruits of years of
> hard work and investment by Plaintiffs.

(Jorgensen Decl. ¶¶ 22, 25). Such speculative and conclusory
allegations are insufficient to withstand summary judgment. See
Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d
290, 310 (2d Cir. 2008); Allen v. Coughlin, 64 F.3d 77, 80 (2d
Cir. 1995). Plaintiffs do not, for example, point to any
evidentiary basis for their "firm understanding" or "firm
conviction," nor do they point to any specific evidence that
defendants appropriated their trade secrets or proprietary
information. Accordingly, the remaining claims in the complaint
are dismissed.

### a.  Fraud

Plaintiffs allege that defendants committed fraud when they requested certain materials from plaintiffs, ostensibly in their capacity as plaintiffs' mortgage brokers, for the purpose of using that information to steal plaintiffs' business.

To succeed on a claim for fraud under New York law, plaintiffs must prove, by clear and convincing evidence, "representation of a material existing fact, falsity, scienter, deception and injury." New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318, 662 N.E.2d 763, 769, 639 N.Y.S.2d 283, 289 (1995).  Here, even assuming the other elements are met, there is no evidence in the record from which a reasonable jury could find, by clear and convincing evidence, that defendants acted with scienter when they requested various records from plaintiffs in connection with the mortgage transaction.  Jorgensen claims, in conclusory terms and without providing any specific evidence, that defendants requested the information under false pretenses, (Jorgensen Decl. ¶ 7), but the Court's review of the record finds no evidence to support such a charge.  Accordingly, this claim is dismissed.

### b.  Intentional Interference with Prospective Economic Advantage

Plaintiffs allege, essentially, that defendants stole all their clients, and therefore are liable to plaintiffs for intentional interference with prospective economic advantage. There is no evidence in the record from which a reasonable jury

-10-

could conclude that, but for defendants' conduct, plaintiffs would have consummated a contract with any of the clients defendants purportedly stole from plaintiffs. Plaintiffs do not, for example, submit any evidence in which customers state that they would have continued to purchase septic supplies from plaintiffs but for defendants' interference. This lack of evidence is fatal to plaintiffs' claim. See Brown v. Bethlehem Terrace Assocs., 136 A.D.2d 222, 225 (3d Dep't 1988) ("As for defendants' contention that a cause of action for intentional interference with prospective economic advantage has been stated, we note that an essential element of this tort is that the complaining party would have consummated a contract but for the interference of a third party . . . .").

## c. **Breach of Contract**

Plaintiffs claim that defendants breached the confidentiality provision of the mortgage broker agreement. There is no evidence in the record, however, to show that defendants used plaintiffs' confidential information for an improper purpose. Plaintiffs have not identified a single instance of confidential information being used for an improper purpose, but instead assert, in a conclusory manner, that defendants have done so. On the contrary, both Hawks's and Skierkowskie's depositions revealed that nothing out of the ordinary happened with Jorgensen's mortgage application. (Hawks Dep. at 68-72; Skierkowskie 25-27). Because there is no evidence

-11-

from which a reasonable jury could find that defendants breached
the contract, plaintiffs' claim is dismissed.

### d.  **Use of Plaintiffs' Name with Intent to Deceive**

Plaintiffs bring a claim under New York General
Business Law ("N.Y. Gen. Bus. Law") § 133 for use of plaintiffs'
name with intent to deceive.  An element of this claim, however,
is that the purportedly unlawful use be likely to deceive or
mislead the public.  See N.Y. Gen. Bus. Law § 133 (McKinney's
2008) (prohibiting uses "which may deceive or mislead the
public"); Frank's Rest., Inc. v. Lauramar Enters., 273 A.D.2d
349, 350, 711 N.Y.S.2d 433, 434 (2d Dep't 2000).  As discussed in
the Prior Decision, there is no risk that the similarities
between plaintiffs' and defendants' websites would confuse
consumers.  Biosafe-One, Inc., 524 F. Supp. 2d at 464-66.
Accordingly, this claim is dismissed.

### e.  **Trademark Infringement Under N.Y. Gen. Bus. Law § 360-k**

Plaintiffs bring a claim for trademark infringement
under N.Y. Gen. Bus. Law § 360-k.  "As with the Lanham Act, a
plaintiff suing for trademark infringement under state law must
prove that defendant's use of the mark is likely to cause
confusion, mistake or to deceive."  New Sensor Corp. v. CE
Distrib. LLC, 303 F. Supp. 2d 304, 317 (E.D.N.Y. 2004) (internal
citation and quotations omitted); accord Solow v. BMW (US)
Holding Corp., No. 97 Civ. 1373 (DC), 1998 U.S. Dist. LEXIS
16059, at *5 (S.D.N.Y. Oct. 13, 1998) (noting that a claim under

-12-

§ 360-k requires plaintiff to prove likelihood of confusion).
Because, as discussed above, there is no likelihood of confusion,
this claim is dismissed as a matter of law.

### f.   Injury to Plaintiffs' Business Reputation and Dilution

To suceed on a claim under N.Y. Gen. Bus. Law § 360-l
for trademark dilution, a plaintiff must prove "(1) that it
possess[es] a strong mark one which has a distinctive quality or
has acquired a secondary meaning such that the trade name has
become so associated in the public's mind with the [plaintiff]
that it identifies goods sold by that entity as distinguished
from goods sold by others, and (2) a likelihood of dilution by
either blurring or tarnishment." Matter of Fireman's Assn. of
State of N.Y. v. French Am. School of N. Y., 41 A.D.3d 925, 928,
839 N.Y.S.2d 238, 242 (3d Dep't 2007) (internal citations and
quotations omitted).  Here, there is no evidence in the record
from which a reasonable jury could conclude that defendants'
website is likely to dilute plaintiffs' trademark.  Accordingly,
this claim is dismissed.

### g.   Claims Under N.Y. Gen. Bus. Law §§ 349 and 350

Plaintiffs claim defendants violated N.Y. Gen. Bus. Law
§§ 349 and 350 by engaging in deceptive business practices,
copyright infringement, consumer fraud, unfair competition, and
false advertising.

Section 349 prohibits generally "[d]eceptive acts or
practices in the conduct of any business, trade or commerce or in

-13-

the furnishing of any service." N.Y. Gen. Bus. Law § 349(a)
(McKinney's 2008). "A plaintiff under section 349 must prove
three elements: first, that the challenged act or practice was
consumer-oriented; second, that it was misleading in a material
way; and third, that the plaintiff suffered injury as a result of
the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29,
731 N.E.2d 608, 611, 709 N.Y.S.2d 892, 895 (2000). Here,
plaintiffs' conclusory allegations notwithstanding, there is no
evidence in the record from which a reasonable jury could
conclude that defendants misled plaintiffs in any way, much less
a material way. Accordingly, plaintiffs' claims brought under §
349 are dismissed.

Section 350 prohibits false advertising. See N.Y. Gen.
Bus. Law § 350 (McKinney's 2008) ("False advertising in the
conduct of any business, trade or commerce or in the furnishing
of any service in this state is hereby declared unlawful."). To
prevail on such a claim "requires proof of a causal connection
between some injury to plaintiffs and some misrepresentation made
by defendants." Small v. Lorillard Tobacco Co., 252 A.D.2d 1,
15, 679 N.Y.S.2d 593, 604 (1st Dep't 1998). The only evidence in
the record that could support this claim is Jorgensen's hearsay
statement in his declaration that "Plaintiffs [sic] customers
also complained that Defendants were passing themselves off as
Plaintiffs when attempting to market their products and
services." (Jorgensen Decl. ¶ 17). Because the Court cannot

-14-

consider hearsay evidence on a motion for summary judgment, this claim is dismissed.

### h. Identity Theft

Plaintiffs claim defendants are liable under the Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. § 1681n, and N.Y. Gen. Bus. Law § 380-s for identity theft. Specifically, plaintiffs claim that defendants obtained Jorgensen's credit report with the intent to use the report to steal Jorgensen's business. The federal and state laws on which plaintiffs rely require, respectively, that the defendant "willfully fail[] to comply" with the FCRA, 15 U.S.C. § 1681n(a), "knowingly and with the intent to defraud," N.Y. Gen. Bus. Law. § 380-s. Plaintiffs do not adduce any evidence, however, from which a reasonable jury could conclude that defendants "willfully" failed to comply with the FCRA, or acted with an intent to defraud. Moreover, as discussed above, the evidence in the record supports defendants' contention that they did nothing improper with the information Jorgensen submitted in connection with his mortgage application, and plaintiffs have not pointed to any evidence to the contrary. Accordingly, this claim is dismissed.

### i. Conversion

Plaintiffs claim defendants are liable for conversion because they copied elements of www.biosafeone.com wholesale and used them on defendants' website. While plaintiffs meet all the technical elements required for a conversion claim under New York law, the claim is nonetheless dismissed on the ground that it is

-15-

duplicative of plaintiffs' claims for copyright and trademark infringement, both of which have been dismissed. See Richbell Info. Servs. v. Jupiter Partners, L.P., 309 A.D.2d 288, 306 (1st Dep't 2003) ("[Plaintiff's] twenty-third cause of action, for conversion, while satisfying the technical elements of that tort, was properly dismissed as duplicative of the insufficient contract claims.") (internal citations omitted); Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co., 293 A.D.2d 341, 341 (1st Dep't 2002) ("Plaintiff's conversion and breach of fiduciary duty claims were also properly dismissed, since they are duplicative of the breach of contract cause of action.").

### j. **Trespass to Chattels**

Plaintiffs claim defendants' theft of their intellectual property constitutes trespass to chattels. To prevail on a claim of trespass to chattels, plaintiffs must prove the following four elements: (1) defendants acted with intent, (2) to physically interfere with (3) plaintiffs' lawful possession, and (4) harm resulted. See Sweeney v. Bruckner Plaza Assoc. LP, No. 23941/00, 2004 N.Y. Misc. LEXIS 3172, at *10 (N.Y. Sup. Ct. July 12, 2004). As to the intent element, "the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result." Sch. of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804, 808 (N.Y. Sup. Ct. 2003). Here, there is no evidence from which a reasonable jury could conclude that defendants acted "with the intention of interfering" with

-16-

plaintiffs' property.  The only evidence in the record suggests
that defendants' copying of plaintiffs' website was inadvertent,
not intentional.  Biosafe-One, Inc., 524 F. Supp. 2d at 460-61;
see also Hawks Dep. at 15-17; Skierkowskie Dep. at 32-34.
Accordingly, this claim is dismissed.

### k.   Unjust Enrichment

Plaintiffs' claim for unjust enrichment arises out of a
written contract, and therefore cannot be sustained under New
York law.  See Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561,
572, 841 N.E.2d 742, 746, 807 N.Y.S.2d 583, 587 (2005) (holding
that "there was no unjust enrichment because the matter is
controlled by contract"); Valley Juice Ltd. v. Evian Waters of
Fr., Inc., 87 F.3d 604, 610 (2d Cir. 1996) ("Under New York law,
'the existence of a valid and enforceable written contract
governing a particular subject matter ordinarily precludes
recovery in quasi contract for events arising out of the same
subject matter.'") (quoting Clark-Fitzpatrick, Inc. v. Long
Island R.R. Co., 516 N.E.2d 190, 193, 70 N.Y.2d 382, 388, 521
N.Y.S.2d 653, 656 (1987)).

### l.   Prima Facie Tort

Plaintiffs claim, in general and conclusory terms, that
defendants are liable for prima facie tort due to unspecified
conduct.  "The requisite elements of a cause of action for prima
facie tort are (1) the intentional infliction of harm, (2) which
results in special damages, (3) without any excuse or
justification, (4) by an act or series of acts which would

-17-

otherwise be lawful." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142-43, 480 N.E.2d 349, 355, 490 N.Y.S.2d 735, 737 (1985). Here, plaintiffs have not adduced any evidence of special damages, and their claim is therefore dismissed. See id. ("A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages.").

### m. Civil Conspiracy

Civil conspiracy is not an independent tort in New York, and this claim is therefore dismissed. See Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co., 23 A.D.3d 162, 163, 803 N.Y.S.2d 512, 513 (1st Dep't 2005) (noting that "civil conspiracy is not recognized as an independent tort in this State"); Bell v. Alden Owners, Inc., 299 A.D.2d 207, 209, 750 N.Y.S.2d 27, 29 (1st Dep't 2002) (same).

## C. Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim

In the Prior Decision, I held that defendants were unlikely to succeed on the merits of their counterclaim, on the ground that there was no evidence that plaintiffs were aware that defendants' website was not infringing when plaintiffs sent the DMCA notices. Biosafe-One, Inc., 524 F. Supp. 2d at 468-70.[2] Defendants have not submitted any evidence to alter this

---

[2] I nonetheless granted defendants' motion for a preliminary injunction, however, on the ground that "they have demonstrated sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping in their favor." Id. at 469.

conclusion, and therefore plaintiffs' motion for summary judgment dismissing the counterclaim is granted.[3]

## D. **Defendants' Motion to File a Supplemental Counterclaim**

Defendants seek leave to file a supplemental counterclaim under Federal Rule of Civil Procedure 15(d), which provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Defendants seek to file a counterclaim based on "plaintiffs' recent campaign to disparage defendants and their products by making deliberate knowingly false accusations as to defendants personally as well as their products." (Defs. Mem. at 21).

A trial court has broad discretion in determining whether to grant a motion to file a supplemental pleading under Rule 15(d). See Quentin Group LLC v. Interlink Prods. Int'l, No. 97 Civ. 0108 (SC) (JCF), 1997 U.S. Dist. LEXIS 8023, at **5-6 (S.D.N.Y. June 9, 1997). Here, I decline to grant defendants leave to file a supplemental counterclaim because it would unduly delay the resolution of this case. See Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) (citing undue delay as proper ground for denying motion under Rule 15(d)). I have already

---

[3]   While the Court is dismissing defendants' counterclaim, I note that plaintiffs would have no good faith basis to file a new DMCA notice, as all of their claims have been dismissed. The Court will retain jurisdiction over this case, however, and in the event plaintiffs do file a new DMCA notice, defendants may turn to this Court for relief.

dismissed plaintiffs' complaint in its entirety and discovery has closed; thus it would unduly delay resolution of this case to permit defendants to file another counterclaim.

## E. Rule 37 Sanctions

Plaintiffs move for a variety of sanctions pursuant to Federal Rule of Civil Procedure 37. Defendants seek recovery of $3,600 in attorneys' fees incurred as a result of plaintiffs' failure to comply with their discovery obligations.[4]

A district court has broad discretion pursuant to Rule 37(b) of the Federal Rules of Civil Procedure to impose sanctions for discovery abuses. See Friends of Animals Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997). Any sanctions imposed by a court for failure to comply with discovery obligations, however, must be just and commensurate with the failure to comply. See Fed. R. Civ. P. 37(b)(2); Monaghan v. SZS 33 Assocs., L.P., 148 F.R.D. 500, 508-09 (S.D.N.Y. 1993).

### 1. Plaintiffs' Motion for Sanctions

Plaintiffs' Rule 37 motion for sanctions is denied. The basis for plaintiffs' motion for sanctions appears to be defendants' purported failure to disclose certain information to plaintiffs. Plaintiffs do not, however, specify what information defendants purportedly failed to disclose, what efforts plaintiff made to obtain that information, or how defendants' purported

---

[4] Though defendants do not explicitly identify the statutory basis for their motion, the Court assumes it is Federal Rule of Civil Procedure 37.

failure to disclose that information prejudiced plaintiffs. Plaintiffs' motion instead consists of conclusory and general statements regarding defendants' purported noncompliance with their discovery obligations. Such generalities are an insufficient basis on which the Court can impose sanctions, and plaintiffs' motion is therefore denied.

### 2. **Defendants' Motion for Attorney's Fees**

Defendants seek $3,600.00 in attorneys' fees for twelve hours of work defendants' counsel were required to bill as a result of plaintiffs' purported failure to comply with their discovery obligations. Their motion is granted. At hearings on May 12 and July 31, 2008, I repeatedly warned plaintiffs' counsel that plaintiffs were required to meaningfully respond to defendants' discovery requests, including by providing copies of Jorgensen's tax records and responding to plaintiffs' discovery requests. (See 5/12/08 Tr. at 15 ("THE COURT: Tax returns are a basic item of discovery when you are seeking lost income. If you are seeking lost income in damages, whether it's an employment case, whether it's a commercial case, the other side is entitled to find out what your income was before and what your income was after. It's that basic. And so, therefore, it is relevant. The objection [by plaintiffs] is overruled."); 7/31/08 Tr. at 6-7 ("THE COURT: The problem is your client is the plaintiff in this case. Your client is the one that should be pushing the case; instead, your client is dragging its feet incredibly and it is just not acceptable.")). Despite these warnings, plaintiffs

-21-

failed to provide meaningful discovery.   It is therefore
appropriate to require plaintiffs to reimburse defendants for the
time defense counsel spent dealing with plaintiffs' refusal to
meaningfully engage in discovery.

The amount of time (twelve hours) and the hourly rate
($300) are reasonable, and defendants' motion for reimbursement
of attorneys' fees in the amount of $3,600.00 is therefore
granted.

## CONCLUSION

For the foregoing reasons, I hereby rule as follows:

(1)   Defendants' motion for summary judgment dismissing
the complaint is granted.

(2)   Plaintiffs' motion for summary judgment dismissing
defendants' counterclaim is granted.

(3)   Defendants' motion for leave to file a
supplemental counterclaim is denied.

(4)   Plaintiffs' motion for sanctions is denied.

(5)   Defendants' motion for sanctions in the amount of
$3,600.00 is granted.

The Clerk of Court is directed to enter judgment
accordingly and to close the case.

SO ORDERED.

Dated:     New York, New York
           July 22, 2009

DENNY CHIN
United States District Judge

-22-